[Cite as *State ex rel. DeWine v. Omar Ibn El Khattab Mosque, Inc.*, 2017-Ohio-4453.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Michael DeWine,  :
Ohio Attorney General,

                                 :

        Relator,                   :

                                 :

v.                                             No. 15AP-939

                                 :

Omar Ibn El Khattab Mosque, Inc.,       (REGULAR CALENDAR)

                                 :

        Respondent.

                                 :

D E C I S I O N

Rendered on June 22, 2017

**On Brief:** *Michael DeWine,* Attorney General, and *Matthew T. Green*, for relator. **Argued:** *Matthew T. Green.*

**On Brief:** *Reash Law Offices, LLC,* and *Maryellen Reash; Taft, Stettinius & Hollister LLP,* and *Donald C. Brey,* for respondents Omar Ibn El Khattab Mosque, Inc. **Argued:** *Donald C. Brey.*

**On Brief:** *Blaugrund Kessler Myers & Postalakis, Incorporated,* and *Fazeel S. Khan;Rosenberg & Ball Co., LPA,* and *David Ball,* for respondents Omar Ibn El Khattab Mosque, Inc. **Argued:** *David Ball.*

IN QUO WARRANTO
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, P.J.

{¶ 1} A faction of Omar Ibn El-Khattab Mosque, Inc. ("Omar Mosque, Inc."), objects to the November 29, 2016 magistrate's decision that granted relator, Michael DeWine, Ohio Attorney General's motion for summary judgment. That judgment entitled

relator to a writ of quo warranto to pursue the dissolution of Omar Mosque, Inc. and oversee the conception of a successor entity. Due to the fact that two factions both claim to represent Omar Mosque, Inc., we shall refer to the two sets of respondents as the "Reash/Brey" respondents and the "Khan/Ball" respondents based on the names of their counsel.

## I. History of the Cases and Parties of the Omar Mosque, Inc.

{¶ 2} The Omar Mosque, Inc., is an Ohio nonprofit corporation that operates a place of worship located at 580 Riverside Drive, Columbus, Ohio, for its associated religious organization, the congregation of Masjid Omar Ibn El-Khattab. As this court has done in prior entries and decisions, we will maintain a strict distinction between these two entities: the nonprofit corporation that is the subject of this quo warranto action, and the religious congregation that it serves.

{¶ 3} The two respondents both claiming to represent Omar Mosque, Inc. have litigated numerous times and have an adversarial history reaching back over five years. In 2007, the Islamic Society of Greater Columbus incorporated Omar Mosque, Inc. and selected the members of Omar Mosque, Inc.'s board of directors. Originally, each board member was to serve only two years until December 31, 2009. Five of the original seven board members, however, remained in their offices beyond the expiration of their original terms. Two members left the board, but were not replaced. This is the "Initial Board" chronologically which the Reash/Brey respondents support.

{¶ 4} The Initial Board decided to renovate and expand the mosque building. By September 2011, they had raised approximately $360,000 for the construction project and had chosen a general contractor.

{¶ 5} The Khan/Ball faction began to challenge the board's decisions. They demanded an election of new board members to replace the Initial Board. In response, the Initial Board scheduled an election for October 8, 2011. In the election, mosque members would vote for one of two options. Under the first option, Omar Mosque, Inc. would hold an election in April 2012 to add four more members to the already existing board. Under the second option, Omar Mosque, Inc., would hold an election in April 2012 to elect nine new board members to replace the existing board. The majority of members who voted in the October 8, 2011 election chose the first option.

{¶ 6} Dissatisfied with the October 8, 2011 election, the Khan/Ball faction scheduled a special meeting of mosque members for October 22, 2011. At that meeting, mosque members held an election for all new board members and elected the Khan/Ball faction members to what we characterize as the "Second Board" chronologically.

{¶ 7} Pursuant to a resolution of the Second Board, JPMorgan Chase Bank, N.A. ("Chase Bank"), at which Omar Mosque, Inc. maintained bank accounts, was notified of the election of a new board and transferred signing authority for Omar Mosque, Inc.'s bank accounts. The general contractor was also informed that the Initial Board no longer had authority to act on Omar Mosque, Inc.'s behalf.

{¶ 8} When the president of the Initial Board discovered what had occurred, he contested the Second Board's actions. In response, Chase Bank froze Omar Mosque, Inc.'s accounts. This prohibited the Initial Board from paying the general contractor as invoices for services became due.

{¶ 9} On November 23, 2011, Omar Mosque, Inc., at the instigation of the Initial Board, filed suit against the members of the Second Board. The Initial Board alleged that the Second Board fraudulently attempted to gain control over Omar Mosque, Inc.'s governance and bank accounts, and unlawfully interfered with Omar Mosque, Inc.'s business relationships with Chase Bank and the general contractor. The members of the Second Board answered the complaint and filed a counterclaim. The counterclaim requested that the court of common pleas issue a declaratory judgment stating that the legitimate board of the Omar Mosque, Inc. was the Second Board, and not the Initial Board.

{¶ 10} On February 16, 2012, the court of common pleas directed Chase Bank to deposit with the clerk of courts the funds in Omar Mosque, Inc.'s accounts, which amounted to $432,313.19. These funds were interpleaded by Chase Bank in Franklin C.P. No. 11-CV-14615. The court of common pleas also stated that the Initial Board and the Second Board should proceed to establish their respective claims to the funds.

{¶ 11} In early April 2012, the Initial Board announced that an election for new board members would be held on April 21, 2012. At the April 21, 2012 election, mosque members elected a new board of seven members. No member of the Initial or Second Board was elected to this "Third Board."

{¶ 12} The Second Board challenged the validity of the Third Board on the basis that the Initial Board did not have the authority to hold the April 21, 2012 election. Immediately prior to the April 21, 2012 election, the Second Board filed a complaint seeking a writ of quo warranto in this court. *State ex rel. Salim v. Ayed*, 10th Dist. No. 12AP-356, 2013-Ohio-4880.

{¶ 13} In a judgment issued August 16, 2012, the court of common pleas sua sponte dismissed the action for lack of subject-matter jurisdiction. The court of common pleas held that the core issue that would determine the action was which board had the authority to govern Omar Mosque, Inc. The court of common pleas found only a quo warranto action could resolve that issue. Because jurisdiction over quo warranto actions is restricted to courts of appeals and the Supreme Court of Ohio, the court of common pleas found that it did not possess the jurisdiction necessary to decide the parties' dispute. *See State ex rel. Battin v. Bush*, 40 Ohio St.3d 236, 238 (1988).

{¶ 14} The decision to sua sponte dismiss for a lack of subject-matter jurisdiction was appealed to this court. On June 27, 2013, we affirmed the dismissal by the court of common pleas for lack of subject-matter jurisdiction, reiterating the rule when relief must be pursued through a quo warranto action:

> To determine whether a party seeks relief that must be pursued through a quo warranto action, courts identify the core issues raised by the parties for judicial resolution. If the principal or primary issue is the validity of the election of corporate officers, then the action, no matter how pleaded, is actually a quo warranto action. * * * Moreover, courts examine the core of relief sought and/or granted. If that relief is a declaratory judgment stating which claimant has a right to office and/or an injunction ordering the removal of a person from office, then the action must be pursued through a quo warranto action.

(Internal citations omitted.) *Masjid Omar Ibn El Khattab Mosque v. Salim*, 10th Dist. No. 12AP-807, 2013-Ohio-2746, ¶ 20. We found that the Initial Board wanted an order that would, "in essence, force the members of the second board to oust themselves from the offices they claim title to. Omar Mosque can only achieve that remedy through a quo warranto action." *Id.* at ¶ 21.

{¶ 15} The right to bring a quo warranto is a right of the state and, except where title to a public office is involved, the use of quo warranto remains in the state or with its officers. *State ex rel. Cain v. Kay*, 38 Ohio St.2d 15, 17 (1974). Therefore, only the attorney general or a prosecuting attorney may bring a quo warranto action challenging the holder of an office or a nonprofit corporation. R.C. 2733.05; *Masjid Omar* at ¶ 23. "The attorney general and prosecuting attorney have a duty to review allegations that a person has usurped a corporate office and determine whether those allegations warrant a quo warranto action." *Id.*, citing *State ex rel. Morris v. Soltez*, 11th Dist. No. 2002-T-0016, 2002-Ohio-3714, ¶ 19. The court of common pleas does not possess the authority necessary to determine which board of directors is validly in office. *Masjid Omar* at ¶ 25.

{¶ 16} In the Second Board's quo warranto action, they requested that this court determine that it is the legitimate board of Omar Mosque, Inc. and oust the members of the other boards from the Second Board's seats. On November 5, 2013, we found that the Second Board lacked the ability to pursue a quo warranto action in their individual capacities and that a corporate director serves the interests of the corporation, not the public. We, therefore, concluded that the director or a nonprofit corporation is not a public office. *State ex rel. Salim* at ¶ 21-22. The Second Board lacked standing to institute a quo warranto action in their individual capacity and would need to bring the dispute to the attention of either the Ohio Attorney General or the Franklin County Prosecuting Attorney. *State ex rel. Salim* at Appendix. Our judgment was affirmed by the Supreme Court of Ohio: "[P]rivate persons claiming to be lawful directors of a religious not-for-profit corporation lack standing to oust others claiming to be the lawful directors by way of an action in quo warranto." *State ex rel. Salim v. Ayed*, 141 Ohio St.3d 129, 2014-Ohio-4736, ¶ 13, citing *State ex rel. Hawthorn v. Russell*, 107 Ohio St.3d 269, 2005-Ohio-6431.

{¶ 17} On October 13, 2015, relator, Michael DeWine, Ohio Attorney General, brought this original action in quo warranto seeking a writ to dissolve the current corporate structure of Omar Mosque, Inc. and the appointment of a receiver to oversee the creation of a successor-in-interest to Omar Mosque, Inc. On May 6, 2016, the attorney general moved for summary judgment and submitted with its memorandum evidentiary materials. The attorney general's motion relies on certain purported

admissions to the extent that the material allegations in the complaint are not denied in the Reash/Brey respondents' answer.

{¶ 18} The Reash/Brey respondents filed an answer to oppose the motion and also filed a motion for partial summary judgment. The Reash/Brey respondents submitted one additional affidavit that was not submitted by the attorney general. The Khan/Ball respondents filed an answer to the attorney general's complaint, essentially agreeing that the quo warranto action is the only judicial means by which resolution to the overall dispute may be achieved and requesting that the summary judgment be granted.

{¶ 19} On November 29, 2016, this court's magistrate rendered a decision addressing all responses and motions by the respondents and the attorney general and granting summary judgment in favor of relator. The magistrate noted that the materials submitted or that are properly before the court do not contain the constitution or bylaws for Omar Mosque, Inc. which were averred to be in effect at the time that the competing boards were elected.

{¶ 20} The magistrate made numerous findings of fact and concluded that the present situation is a direct result of the Omar Mosque, Inc.'s failure to comply with requisite corporate formalities. This failure, along with the resulting loss of control over charitable funds, shows corporate dysfunction. "[W]ithout definition of voting membership, regular board meetings, and up-to-date membership roster, the direction of the corporate entity is no longer supported through recordable action." (Nov. 29, 2016 Mag.'s Decision at 14.)

{¶ 21} The magistrate found that the attorney general is entitled to a writ of quo warranto pursuant to R.C. 2733.02 and 2733.20 to purse the judicial dissolution of Omar Mosque, Inc. under R.C. 1702.52(A)(1), 2733.21, and 2733.22. The magistrate also ordered the attorney general to consult with the respondent factions and submit a list of proposed trustees. This court would then appoint trustees and remand the matter to the court of common pleas under Franklin C.P. No. 11CV-14615 for further proceedings. The court of common pleas would then oversee the dissolution of Omar Mosque, Inc. and the constitution of a successor entity.

{¶ 22} The Reash/Brey respondents filed objections to the magistrate's decision. The attorney general and the Khan/Ball respondents both filed responses in opposition to

the Reash/Brey respondents' objections. Following an oral argument on the objections to the magistrate's decision, we now undertake an independent review of the factual issues and also decide whether the law was appropriately applied in the magistrate's decision. Civ.R. 53(D)(4)(d).

## II. Legal Standards Applied

{¶ 23} First, we reiterate what the magistrate expressed—that the distinction in this case between a controversy subject to civil law and any possible underlying theological dispute is paramount.

> Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. *And there are neutral principles of law, developed for use in all property disputes, which can be applied without "establishing" churches to which property is awarded.*

(Emphasis sic.) *Serbian Orthodox Church Congregation of St. Demetrius v. Kelemen*, 21 Ohio St.2d 154, 157 (1970), citing *Presbyterian Church in United States v. Mary Elizabeth Blue Hull Mem. Presbyterian Church*, 393 U.S. 440, 449 (1969).

{¶ 24} If civil courts undertake to resolve religious doctrine and practice controversies in order to adjudicate the property dispute, "the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern. Because of these hazards, the First Amendment enjoins the employment of organs of government for essentially religious purposes." *Presbyterian Church* at 449, citing *School Dist. of Abington Twp. v. Schempp*, 374 U.S. 203 (1963). Therefore, the First Amendment commands civil courts to decide church property disputes "without resolving underlying controversies over religious doctrine. Hence, States, religious organizations, and individuals must structure relationships involving church property so as not to require the civil courts to resolve ecclesiastical questions." *Presbyterian Church* at 449. We are bound therefore to only resolve questions of civil law and whether quo warranto action is appropriate.

{¶ 25} The attorney general brings this original action in quo warranto pursuant to R.C. Chapter 2733. The attorney general claims that Omar Mosque, Inc.'s past actions and omissions constitute violations of R.C. 1702.13, 1702.15, and 1702.16. The attorney general alleges that Omar Mosque, Inc. has: offended against law providing for its

creation or renewal; committed or omitted acts which amount to a surrender of its corporate rights, privileges, and franchises; and misused a franchise, privilege, or right conferred upon it by law, allowing a quo warranto action to be brought. *See* R.C. 2733.02.

{¶ 26} "The corporation itself can only exist under the sovereignty of the state." *State ex rel. Crabbe v. Thistle Down Jockey Club, Inc.*, 114 Ohio St. 582, 591 (1926). The state has abundant power to regulate and control its corporations and to forfeit their powers entirely. *Id.* at 600. "Corporations owe their existence to the written laws of the state. They are organized under general laws, and may be regulated, and their existence may be terminated in accordance with general laws and by means of processes provided by general laws." *Id.* at 592-93. "[U]nder the common law, the basic purpose of a quo warranto proceeding was to protect the public against the abuse of corporate power and the usurpation of the state's sovereign authority; hence, this type of proceeding could only be maintained by the state itself and its officers." *Stewart v. Bur. of Workers' Comp.*, 11th Dist. No. 2209-P-0003, 2009-Ohio-4255, ¶ 9. The writ of quo warranto is now governed in Ohio by R.C. Chapter 2733.

{¶ 27} Our magistrate recommended that the attorney general's motion for summary judgment be granted and the Reash/Ball respondents' motions for summary judgment be denied. Civ.R. 56(C) states that summary judgment shall be rendered forthwith if:

> [T]he pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion.

{¶ 28} Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to

the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 65-66 (1978). "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once the moving party meets its initial burden, the nonmoving party must then produce competent evidence showing that there is a genuine issue for trial. *Id.* at 293.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

Civ.R. 56(E). "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998). Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶ 29} In the summary judgment context, a "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993). When determining what is a "genuine issue," the court decides if the evidence presents a sufficient disagreement between the parties' positions. *Id.*

{¶ 30} Further, a genuine issue of material fact is not created by the contradictory evidence submitted from a nonmoving party in a summary judgment motion absent some sufficient explanation of the contradiction. When an inconsistent affidavit is presented in support of, or in opposition to a motion for summary judgment, a trial court must consider whether the affidavit contradicts or merely supplements the affiant's earlier sworn testimony. A movant's contradictory affidavit will prevent summary judgment in that party's favor. A nonmoving party's contradictory affidavit must sufficiently explain

the contradiction before a genuine issue of material fact is created. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 29. While *Byrd* addressed an affidavit that contradicted a prior deposition, the logic of rule can extend to two inconsistent depositions offered by the same party.

{¶ 31} The Supreme Court has held that a party seeking summary judgment on the ground that the nonmoving party cannot prove its case, bears the initial burden to inform the trial court of the basis for the motion and identifying the portions of the record demonstrating an absence of a genuine issue of material fact. *Dresher*, *supra*. The moving party does not discharge its burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. *Id.* Rather, the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates the nonmoving party has no evidence to support its claims. *Id.*

{¶ 32} Further, when a motion for summary judgment has been supported by proper evidence, the nonmoving party may not rest on the mere allegations of the pleading, but must set forth specific facts, by affidavit or otherwise, demonstrating that there is a genuine triable issue. *Jackson v. Alert Fire & Safety Equip., Inc.*, 58 Ohio St.3d 48, 52 (1991). If the nonmoving party does not demonstrate a genuine triable issue, summary judgment shall be entered against that party. Civ.R. 56(E).

## III. Findings of Fact

{¶ 33} Based on the evidence, which includes filings with the Ohio Secretary of State, pleadings and decisions from previous cases, affidavits and other evidence submitted, the magistrate recommended we make the following findings of fact. Many of these facts have been previously established in prior cases or admitted to in answers by the respondents:

1. Relator Michael DeWine is the duly elected, qualified and acting Attorney General in the state of Ohio.

2. Relator brings this action pursuant to the authority and procedures set forth in Ohio Revised Code Chapter 2733.

3. Omar Mosque, Inc. was incorporated as a nonprofit corporation on June 21, 2007 to operate an established place of worship under the laws of the state of Ohio with its principal place of business in Franklin County. The initial

articles of incorporation do not name anyone to the board of directors.

4. The Initial Board of directors was identified at or near the time of the Omar Mosque, Inc.'s initial formation.

5. An Initial Board of directors was identified and included the Reash/Brey respondents: Mounir Ayed, Ghassan Bin Hammam, Nasser Kashou, Quassai Marashdeh, and Noorgul Dada.

6. The Initial Board was to govern Omar Mosque until the end of 2009 and during that time the board was to create a mechanism for renewing memberships and for adding new members and to prepare a constitution and bylaws to be ratified by the Omar Mosque, Inc. members.

7. Despite the fact that the Initial Board was only to govern until the end of 2009, the Initial Board continued to govern beyond 2009.

8. While the Initial Board continued to govern, some members of Omar Mosque, Inc. began questioning their authority and asking when elections would occur.

9. Despite the fact that some members of Omar Mosque questioned the authority of the Initial Board to continue governing after 2009, no one took any action to organize a push for change until fall 2011.

10. From 2007 through at least September 2011, Omar Mosque, Inc. did not maintain a record of its members containing the name and address of each member, the date of admission to membership, and if members are classified, the class to which the member belongs.

11. Neither respondent faction has factually established that voting membership requirements and procedures were in place for the nonprofit corporation, or to what extent they were enforced or exercised during the period between corporate inception in 2007 to the time of the election of competing boards in late 2011. The affidavit of Basil Mohamed Gohar states that such voting requirements have been defined and respected by the Reash/Brey respondents since 2012, causing the magistrate to conclude that these were absent, ill-defined, or ignored prior to that time.

12. No special or annual meeting of the members of the Omar Mosque, Inc. was held in either 2009 or 2010 for purposes of electing individuals to serve on the board of directors for Omar Mosque, Inc. in either 2010 or 2011.

13. On September 9, 2011, members of the Omar Mosque, Inc. gathered for a meeting to address the concerns raised by certain members.

14. Differences between members of the congregation arose in relation to construction of improvements in the mosque building, culminating in separate meetings in October 2011 at which two competing boards were elected by the respective factions.

15. Ultimately, it was determined that a community vote would take place on October 8, 2011.

16. In the meantime, the Khan/Ball respondents assert that they provided notice of a community meeting to be held on October 1, 2011.

17. At the October 1, 2011 meeting, a majority of the attendees decided to call a special meeting on October 22, 2011 to address the issues of elections, membership, and bylaws.

18. According to the Reash/Brey respondents, on October 8, 2011, 157 people voted, and 113 people chose Option I: the Initial Board would remain in place and four additional members would join the board of directors.

19. According to the Khan/Ball respondents, 79 people attended the October 22, 2011 meeting at which time nominations for a new board of directors were opened, 14 people were nominated and those in attendance voted. *State ex rel. Salim v. Ayed,* 2013-Ohio-4880.

20. According to the Khan/Ball respondents, the following people were elected to the "Second Board": Hamid Salim, Dr. Khaled Khamees, Mohammed Allouche, Dina Ali, Hagar Diab, Nihad Al Khalidi, Fouad ElFaour.

21. Thereafter, the Second Board held a meeting, elected officers, and drafted a resolution that would allow them to assume control of Omar Mosque, Inc.'s bank accounts.

22. The Second Board presented the resolution to the Chase Bank, where Omar Mosque, Inc.'s bank accounts were situated, and the bank transferred control of the account to the Second Board.

23. As a result, on November 23, 2011, the Omar Mosque, Inc. filed an action in the Franklin County Court of Common Pleas, case No. 11CV-14615, at the instigation of the Initial Board. The complaint sought damages and equitable relief, alleging that the members of the Reash/Brey respondents were the lawful board members.

24. The court of common pleas, in case No. 11CV-14615, accepted an agreed entry to interplead the funds held by Chase Bank. The $432,313.19 in funds interpleaded with the clerk of courts consists principally of donations by members of the Masjid Omar Ibn El Khattab congregation.

25. The common pleas judge attempted to assist the members of Omar Mosque, Inc. to reach a mutually agreed upon method by which the members could select a new board; however, all attempts at reconciliation have failed.

26. Soon thereafter, the Initial Board decided to hold an election for new board members.

27. The Initial Board announced an election procedure with an independent third-party election committee to oversee the election and the election results.

28. Nominations for the board were solicited and, on April 20, 2012, the candidates each gave a short presentation about their vision for the community.

29. The election was conducted on April 21, 2012. One hundred and forty six valid ballots were cast and the following individuals were elected to the Board of Directors of Omar Mosque, Inc., this is characterized as the Third Board: Basil Gohar (136 votes); Marwan Mohammed (127 votes); Ehsan Diab (125 votes); Mohamed Taffa (111 votes); Azad Zangana (110 votes); Brahim Mousaid (97 votes); and Bakht Quraish (76 votes).

30. The final membership list, according to the Reash/Brey respondents, for voting in April 21, 2012 election included 314 registered members.

31. On April 20, 2012, the Khan/Ball respondents filed a quo warranto action with this court to remove the Reash/Brey respondents as members of the board of directors. This court eventually held that the relators in that action did not have standing to institute a quo warranto action in their individual capacities. *State ex rel. Salim v. Ayed*, 10th Dist. No. 12AP-356, 2013-Ohio-4880, *affirmed*, 141 Ohio St.3d 129, 2014-Ohio-4736.

32. On August 16, 2012 the common pleas judge in case No. 11CV-14615, sua sponte dismissed the case for lack of subject-matter jurisdiction, finding that an action in quo warranto was the proper remedy. *Masjid Omar Ibn El-Khattab Mosque v. Hamid Salim et al.*, Franklin C.P. No. 11-CV-14615 (Dec. 15, 2014).

33. On appeal, this court affirmed in part the common pleas' August 16, 2012 decision in case No. 11-CV-14615 with the following language:

> The trial court does not possess the authority
> necessary to determine which boards of directors
> is validly in office.

*Masjid Omar Ibn El-Khattab Mosque v. Salim*, 10th Dist. No. 12AP-807, 2013-Ohio-2746, ¶ 25.

34. This court's decision on appeal did reverse the court of common pleas to the extent that the court of common pleas was instructed to vacate its entry dismissing the action and instead enter a stay pending resolution of the dispute via separate proceedings in quo warranto:

> Once a judgment in quo warranto is obtained, the
> prevailing side must be able to file a motion with
> the trial court requesting an order awarding the
> interpleaded funds to it.

*Id.* at ¶ 29. On remand, the court of common pleas entered the appropriate stay on July 1, 2013.

35. The court of common pleas had denied several motions brought by the Reash/Brey respondents seeking reactivation of case No. 11-CV-14615. The latest such denial is currently on appeal before this court and subject to a stay pending resolution of this quo warranto action. *Masjid Moar Ibn El-Khattab Mosque, Inc. v. Salim*, 10th Dist. No. 15AP-22 (Aug. 28, 2015 journal entry).

36. Through the course of discussions with the attorney general's office prior to filing this matter, the respondents have submitted competing voting-membership lists that cannot be reconciled. Not a single individual appears on both lists.

37. The parties agree that, despite the inability to access the considerable sum now interpleaded with the clerk of courts, the religious, financial, and temporal affairs of the congregation remain relatively undisturbed by the ongoing factional dispute and formation of competing boards. The Reash/Brey respondents continue to manage most day-to-day aspects of the organization's activity without significant input from the Khan/Ball Board.

## IV. Conclusions of Law

{¶ 34} The crux of the legal dispute between the Reash/Brey respondents and the Khan/Ball respondents is which board of directors is the legitimate representatives of Omar Mosque, Inc., and therefore has the authority to govern the nonprofit corporation. The attorney general has chosen, with respect to the present motions for summary judgment, to pursue dissolution of Omar Mosque, Inc. under R.C. 2733.02 and 2733.20 for failure to comply with the requisite actions found in R.C. 1702.13, 1702.15, and 1702.16, and expressly does not seek the quo warranto remedy to oust a board under R.C. 2733.01.

{¶ 35} R.C. 2733.02 states when a writ of quo warranto can be used against a corporation itself:

> A civil action in quo warranto may be brought in the name of the state against a corporation:
>
> (A) When it has offended against a law providing for its creation or renewal, or any amendment thereof;

(B) When it has forfeited its privileges and franchises by nonuser;

(C) When it has committed or omitted an act which amounts to a surrender of its corporate rights, privileges, and franchises;

(D) When it has misused a franchise, privilege, or right conferred upon it by law, or when it claims or holds by contract or otherwise, or has exercised a franchise, privilege, or right in contravention of law;

(E) When any application for a license to transact business in this state filed by a foreign corporation, any articles of incorporation of a domestic corporation or any amendment to them, or any certificate of merger or consolidation which set forth a corporate name prohibited by the Revised Code, has been improperly approved and filed.

{¶ 36} R.C. 2733.20 provides for forfeiture of corporate rights:

When, in an action in quo warranto, it is found and adjudged that, by an act done or omitted, a corporation has surrendered or forfeited its corporate rights, privileges, and franchises, or has not used them during a term of five years, judgment shall be entered that it be ousted and excluded therefrom, and that it be dissolved.

{¶ 37} In *State ex rel. Falke v. Montgomery Cty. Residential Dev., Inc.*, 40 Ohio St.3d 71 (1988), the Supreme Court wrote:

When, in an action in quo warranto, it is found and adjudged that a corporation has violated R.C. 2733.02(A) by offending against a law providing for its own creation, R.C. 2733.20 requires that judgment be entered that the corporation be entirely ousted and excluded from its privileges, rights and franchises, and that it be dissolved.

*Id.* at syllabus.

{¶ 38} The attorney general is charged, inter alia, with inquiring into any abuse of charitable donations. *Brown v. Concerned Citizens for Sickle Cell Anemia, Inc.*, 56 Ohio St.2d 85, 90-91 (1978). While in the present case there is no allegation of abuse in the sense of misdirection of donated funds towards improper parties, the underlying dispute

centers on the right to control funds donated primarily for the purpose of improving a place of worship. Those funds have yet to be used for their intended purpose and have been inaccessible for over five years.

{¶ 39} The attorney general alleges that Omar Mosque, Inc.'s past actions and omissions constitute violations of R.C. 1702.13, 1702.15 and 1702.16 which amounts to a violation of R.C. 2733.02. R.C. Chapter 1702 states, in relevant part:

§ **1702.13 Membership**.

(A) The corporation shall maintain a record of its members containing the name and address of each member, the date of admission to membership, and, if members are classified, the class to which the member belongs.

* * *

(C) Membership in a corporation may be terminated in the manner provided by law, the articles, or the regulations, and upon the termination of membership for any cause, such fact and the date of termination shall be recorded in the corporation's membership records.

* * *

(F) Whenever the number of members of a corporation that, under the law, the articles, or the regulations, must have a specified number of members, is reduced below the specified number, the corporation shall not be required because of that reduction to cease carrying on its activities, but the continuing members may fill all vacancies.

(G) Unless otherwise provided in the articles or regulations of a corporation, all members have the same membership rights and privileges.

§ **1702.15 Books, records of account and minutes**.

Each corporation shall keep correct and complete books and records of account, together with minutes of the proceedings of its incorporators, members, directors, and committees of the directors or members. Subject to limitations prescribed in the articles or the regulations upon the right of members of a corporation to examine the books and records, all books and records of a corporation, including the membership

> records prescribed by section 1702.13 of the Revised Code, may be examined by any member or director or the agent or attorney of either, for any reasonable and proper purpose and at any reasonable time.
>
> **§ 1702.16 Annual meeting.**
>
> An annual meeting of voting members for the election of directors and the consideration of reports to be laid before such meeting shall be held on a date designated by or in the manner provided for in the articles or the regulations. In the absence of such a designation, the annual meeting shall be held on the first Monday of the fourth month following the close of each fiscal year of the corporation. When the annual meeting is not held or directors are not elected thereat, they may be elected at a special meeting called for that purpose.

{¶ 40} Our magistrate recommended that we find, based on the facts before us, that Omar Mosque, Inc. has violated many statutory requirements of R.C. Chapter 1702. Omar Mosque, Inc. has violated R.C. 1702.13 in failing to maintain a record of its members from the period of 2007 through 2011. This lack of record keeping has also resulted in a violation of R.C. 1702.15. There has also been a violation of R.C. 1702.16 for the failure to conduct an annual or special meeting of voting members for the election of directors in either 2009 or 2010.

{¶ 41} These basic statutory requirements that Omar Mosque, Inc. violated would protect a corporation from the confusion and internal paralysis that this case has shown resulted when an internal division arose. Without a defined voting membership, regular meetings, and up-to-date membership roster, the authority of the board, and thus the legitimacy of the corporation itself, is no longer supported through recordable action.

## V. Objections

{¶ 42} The Reash/Brey respondents filed objections to the magistrate's decision. Civ.R. 53 requires a court to conduct an independent review when a party files objections to the decision of the magistrate. App.R. 34(A); Civ.R. 53(D)(4)(a). This court recognizes that it is better practice for a court to individually itemize and address objections separately. *Green v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 02AP-24, 2002-Ohio-5967, ¶ 17.

{¶ 43} In the first objection, the Reash/Brey respondents argue that the magistrate exceeded the scope of the attorney general's motion for summary judgment arguing that the motion was based only on Omar Mosque, Inc.'s inability to access the interpleaded funds. The parameters in which summary judgment can be granted are clear. Summary judgment is appropriate when: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles* at 629.

{¶ 44} The magistrate recommended that we find that summary judgment is appropriate based on the pleadings and evidence that established that Omar Mosque, Inc. did not conform to the statutorily required corporate formalities. This failure to conform is what underlies the loss of control of the interpleaded funds. "[T]he dispute would not have arisen, or at least not have caused the corporation to lose control of its funds, had the corporation complied with statutory requirements regarding membership and annual meetings." (Nov. 29, 2016 Mag.'s Decision at 13.) Stated differently, the inability to access the charitable funds is a stark example of the corporation's inability to function properly as a result of the failure to adhere to the statutory requirements.

{¶ 45} The granting of summary judgment is not limited to the legal analysis of the moving party. The court examines the evidence to determine if a genuine issue of material fact remains and if the moving party is entitled to judgment as a matter of law. *Harless* at 65-66. The moving party must inform the court of the basis for the motion, not the legal conclusions to be used. *See Dresher* at 292. "[T]he moving party must state specifically which areas of the opponent's claim raise no genuine issue of material fact and such assertion may be supported by affidavits or otherwise as allowed by Civ. R. 56(C)." *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988).

{¶ 46} The attorney general need only state specifically the areas of the claim that raise no genuine issue of material fact. That area in this case is Omar Mosque, Inc.'s failure to conform statutory requirements so that it would satisfy R.C. 2733.02 and 2733.20. The magistrate did not "exceed the scope" of the attorney general's motion by

examining the evidence relating to Omar Mosque, Inc.'s conduct in regards to the statutory requirements of all nonprofit corporations in Ohio.

{¶ 47} The first objection is overruled.

{¶ 48} The second objection argues that the evidence shows that the Reash/Brey respondents are not at fault in any way in failing to secure the release of the interpleaded funds. This objection is an inaccurate interpretation of the magistrate's decision. The magistrate does not place blame or fault on one faction or the other, but focuses on whether Omar Mosque, Inc. has complied with the statutory requirements. The fact that neither faction can access the interpleaded funds or has a legal mechanism to do so unilaterally is a result of the state of Omar Mosque, Inc.'s inability to determine who has authority to act in its interest. The attorney general and the magistrate were clear in not showing preference for one respondent over the other and refused to assign fault. The magistrate's decision examines the facts of whether Omar Mosque, Inc. complied with the requisite corporate formalities.

{¶ 49} The Reash/Brey respondents argue that the attorney general should have sought a quo warranto remedy under R.C. 2733.01 to oust one of the board of directors. Why the attorney general did not pursue this remedy is clear. The attorney general did not seek to ouster a board under R.C. 2733.01 so the question is moot. The reasoning is obvious that the attorney general wished to avoid treading to close to the exclusive religious domain by attempting the ouster of one board in favor of another, if there is a possibility that the faction's differences may reflect some element of religious doctrine.

{¶ 50} The second objection is overruled.

{¶ 51} The third objection to the magistrate's decision argues that the facts on which summary judgment was granted are in dispute. The Reash/Brey respondents rely on the affidavit of Basil Gohar to show that the Mosque had been in compliance with the requisite statutory requirements and disputes several of the magistrate's findings of fact.

{¶ 52} The magistrate's decision clearly recommends that we find specific facts. After undertaking an independent review, we determine that almost all of the facts have already been admitted to by both respondents or have already been clearly established in the law of the case, most notably *Masjid Omar*, 2013-Ohio-2746, and *State ex rel. Salim*, 2013-Ohio-4880.

{¶ 53} The affidavit of Basil Gohar does not contradict the facts stated herein.  Mr. Gohar only states that elections for the board of directors have been held since 2012.  He says nothing about the time period in question, 2007 through 2011.  Further, the affidavit supports a finding that the key membership lists are unreconciled.

{¶ 54} Mr. Gohar states that the Omar Mosque, Inc.'s directors have faithfully executed their duties through the years.  This very broad and general statement does not set forth specific facts that are required to show that there is a genuine issue as to a material fact.

{¶ 55} The Reash/Brey respondents also argue that the magistrate erred in paragraph six of his findings of fact and mischaracterized that Omar Mosque, Inc. as represented by two sets of legal counsel, each representing a faction which claimed to constitute the lawfully-elected board of directors.  We agree with the magistrate's findings.  It is simply true that two different factions claim to be the lawful board of directors.

{¶ 56} The third objection is overruled.

{¶ 57} The fourth objection argues that dissolution of the Omar Mosque, Inc. is unwarranted, arguing that Omar Mosque, Inc. has not surrendered or forfeited its corporate rights, privileges and franchises.  The failure to adhere to statutory requirements and the practices of the corporation resulted in a situation in which final authority cannot be determined without great difficulty or even at all.  The attorney general, acting for the sovereign state, must be able to compel a corporation to act within the statutory parameters set, which is required to protect the public.  *State ex rel. Crabbe* at 598.  The dissolution of the corporation is warranted.

{¶ 58} The fourth objection is overruled.

{¶ 59} The fifth objection argues that the evidence shows that the Omar Mosque, Inc. was established as a self-perpetuating board until the board changed the governing documents in 2012.  The Reash/Brey respondents are trying to argue who is the legitimate board and who has the authority to govern the Omar Mosque, Inc.  This is not the question before this court.  The question we are deciding is whether the nonprofit corporation adhered to the statutory requirements, not who has the right to control it.

{¶ 60} The fifth objection is overruled.

{¶ 61} The sixth objection argues that the evidence establishes that the list of board members and the list of voting members were one and the same. The Reash/Brey respondents argue that there is no evidence of a two-year term limit for directors of the board. This goes to the issue of who is the legitimate board, which is not the question in this case. Further, the two-year limit has already been established in prior case law. *See State ex rel. Salim*, 2013-Ohio-4880.

{¶ 62} The sixth objection is overruled.

{¶ 63} The seventh objection argues again that the Khan/Ball faction was never the lawful board of directors. Again, the Reash/Brey respondents ask this court to decide who has the authority to govern the Omar Mosque, Inc. The question is whether the nonprofit corporation adhered to the statutory requirements, not who has the right to control it.

{¶ 64} The seventh objection is overruled.

{¶ 65} The eighth objection argues that the attorney general failed to meet the summary judgment burden as there are facts that are plainly disputed and the magistrate exceeded the scope of the motion. This objection is simple a reiteration of the first and third objections, both of which have been overruled above.

{¶ 66} The eighth objection is overruled.

{¶ 67} The ninth objection argues that the Reash/Brey respondents' motion for summary judgment is unopposed and should be granted. The motion for summary judgment alleges that the Khan/Ball respondents have no right to oppose the release of the interpleaded funds. The Reash/Brey respondents again ask the court to determine which board of directors has the right to control the funds. Once again, this is not the issue in the case, and the question of where the authority lies is not being decided. The ninth objection is overruled. The Reash/Brey respondents' motion for summary judgment is therefore denied.

## VI. Conclusion

{¶ 68} In summary, We adopt the findings of fact and conclusions of law contained in our magistrate's decision. Omar Mosque, Inc.'s failure to maintain a record of its members and failure to hold meeting are violations of R.C. Chapter 1702 which amounts to a surrender of its corporate rights, privileges, and franchises. This entitles the attorney general to a writ of quo warranto pursuant to R.C. 2733.02 and 2733.20 to pursue the

judicial dissolution of Omar Mosque, Inc. under R.C. 1702.52(A)(1). Pursuant to R.C. 2733.21 and 2733.22, a trustee shall be appointed and the cause remanded to the Franklin County Court of Common Pleas. The attorney general's motion for summary judgment as noted earlier is granted.

{¶ 69} In light of the stable management provided by the Reash/Brey respondents, and the Khan/Ball board's willingness to efface itself from the day-to-day operation of the mosque, the oversight of the trustees or a receiver in this case may be limited to resolution of the current corporate dysfunction and need not intrude into the religious affairs of the mosque.

{¶ 70} Omar Mosque, Inc.'s violations of R.C. Chapter 1702 have resulted in a situation which justifies a writ of quo warranto and ultimately the dissolution of the nonprofit corporation. The attorney general shall consult with the Reash/Brey respondents and the Khan/Ball respondents and submit a list of proposed trustees pursuant to R.C. 2733.21. After appointment of trustees by this court, we will remand the matter to the court of common pleas under Franklin C.P. No. 11CV-14615 for further proceedings, as authorized by R.C. 1702.52(A)(1) and 2733.22. The court of common pleas will oversee the dissolution of Omar Mosque, Inc. A successor entity to carry on the business aspect of the mosque may be established. The court of common pleas shall have complete discretion to proceed through the appointment of a receiver under R.C. 1702.52(C) and 2735.01(A)(6) or to the continued appointment of trustees pursuant to R.C. 2733.21 through 2733.28 to oversee the constitution of a successor entity.

*Relator's motion for summary judgment granted;*
*Respondent's motion for summary judgment denied.*
*Objections overruled. Writ granted; cause remanded.*

BROWN, J., concurs
LUPER SCHUSTER, J., concurs in judgment only.

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel.<br>Michael DeWine, Ohio Attorney General, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 15AP-939 |
| | : | |
| Omar Ibn El Khattab Mosque, Inc., | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |
| | : | |

### MAGISTRATE'S DECISION

### Rendered on November 10, 2016

*Michael DeWine,* Attorney General, *Matthew T. Green,* and *Yvonne Tertel,* for relator.

*Reash Law Offices, LLC,* and *Maryellen Reash,* and *Taft, Stettinius & Hollister LLP,* and *Donald C. Brey,* for respondents Omar Ibn El Khattab Mosque, Inc. ("Reash/Brey respondents").

*Blaugrund Kessler Myers & Postalakis, Incorporated,* and *Fazeel S. Khan,* and *Rosenberg & Ball Co., LPA,* and *David Ball,* for respondents Omar Ibn El Khattab Mosque, Inc. ("Khan/Ball respondents").

### IN QUO WARRANTO
### ON MOTION FOR SUMMARY JUDGMENT

{¶ 71} Relator, Michael DeWine, Ohio Attorney General, brings this original action in quo warranto seeking a writ to dissolve the current corporate structure of respondent, Omar Ibn El Khattab Mosque, Inc. ("Omar Mosque, Inc."), and the appointment of a

receiver to oversee the creation of a successor entity. The successor corporation would carry on the legal and statutory functions of Omar Mosque, Inc. in relation to its associated religious organization, the congregation of Masjid Omar Ibn El Khattab ("Masjid Omar" or "the mosque"), with a principal place of worship located at 580 Riverview Drive, Columbus, Ohio. As the court and parties have done in prior filings and entries, this decision will maintain a strict distinction between these two entities: the nonprofit corporation that is the object of this quo warranto action, and the religious congregation that it serves.

{¶ 72} The attorney general's complaint generally states that corporate dissolution is the only means by which to resolve a deadlock between two competing groups, each asserting that it properly represents Omar Mosque, Inc. through a duly-elected board of directors. This impasse blocks access by the congregation to $432,313.19 in corporate funds interpleaded by JPMorgan Chase Bank with the Franklin County Clerk of Courts in a related case before the court of common pleas, *Masjid Omar Ibn El Khattab Mosque v. Salim*, Franklin C.P. No. 11CV-14615.

{¶ 73} The complaint states that despite extensive litigation and some attempts at mediation, the two factions vying for control of Omar Mosque, Inc. have reached neither a judicial resolution nor a negotiated settlement allowing release of the interpleaded funds. The complaint specifically notes that past litigation between the parties culminated in our decision in *Masjid Omar Ibn El Khattab Mosque v. Salim*, 10th Dist. No. 12AP-807, 2013-Ohio-2746, providing in part as follows:

> [W]e reject * * * Omar Mosque's arguments that the trial court erred in determining that it lacked subject-matter jurisdiction over the instant action. The trial court does not

> possess the authority necessary to determine which board of directors is validly in office.

*Id.* at ¶ 25. The complaint further notes that our decision in that case was not appealed and now constitutes the law of the case regarding the trial court's lack of jurisdiction to choose between the competing boards.

{¶ 74} Based on the competing boards' inability to agree on a voting membership list for Omar Mosque, Inc. (as opposed to a membership list for Masjid Omar) and, thus, make conclusive arguments as to the relative legitimacy of the competing boards, the attorney general argues that Omar Mosque, Inc. has failed of its essential purpose, and that the organization's past actions and omissions constitute violations of Ohio's corporate nonprofit governance requirements set forth in R.C. Chapter 1702, specifically the record-keeping, board-meeting, and membership-classification requirements of R.C. 1702.13, 1702.15, and 1702.16. The attorney general asserts that this creates grounds for an action in quo warranto pursuant to R.C. 2733.02(C) in that Omar Mosque, Inc. has (1) offended against a law providing for its creational or renewal; (2) committed or remitted acts that amount to a surrender of its corporate rights, privileges, and franchises; or (3) misused a franchise, privilege or right conferred upon it by law.

{¶ 75} The competing boards have each filed an answer to the attorney general's complaint. They are correspondingly represented by two different sets of attorneys appearing on behalf of Omar Mosque, Inc. as respondent. Through the course of this action, the attorney general and the magistrate have for the sake of convenience used the names of counsel to identify the boards, referring to these as the "Reash/Brey respondents" and the "Khan/Ball respondents." Without implying any superior claim of right or legitimacy, one may summarize by stating that the Reash/Brey faction represents

the "initial board," chronologically speaking, of Omar Mosque, Inc. dating from its inception in 2007, and a line of successor boards elected in proceedings that relied on the legitimate status of the initial board. The Khan/Ball faction represents what may be called the "second board," elected in 2011 pursuant to separate, parallel, and competing proceedings after a split developed in the congregation of Masjid Omar.

{¶ 76} The Khan/Ball respondents have filed an answer to the attorney general's complaint that essentially does not contest the claim and proposed remedy.

{¶ 77} The Reash/Brey respondents have filed an answer opposing issuance of a writ. This is based generally on assertions regarding the legitimacy of the initial board, the illegitimacy of the second board, and the inappropriateness of quo warranto because Omar Mosque, Inc. has not engaged in any of the purported violations set forth in R.C. 2733.02(C).

{¶ 78} In support of summary judgment, the attorney general has submitted evidentiary materials and relies on certain purported admissions to the extent that the material allegations in the complaint are not denied in the Reash/Brey faction's adversarial answer. Appropriately, the attorney general does not reply on the generally non-adversarial answer filed by the Khan/Ball faction for any further admissions.

{¶ 79} The attorney general has provided complaints, trial court decisions, and appellate court decisions from prior litigation in the Franklin County Court of Common Pleas, this court, and the Supreme Court of Ohio. These include the agreed entry to interplead the contested funds in the trial court. The attorney general also provided copies of Omar Mosque, Inc.'s initial articles of incorporation, as filed with the Ohio Secretary of State. The parties have not provided the court with authenticated copies of

the bylaws or constitution for the corporation, voting membership definitions, or other admissible evidence that would allow the court to further address the question of the circumstances under which the competing boards were elected. The magistrate notes that this is consistent with the attorney general's policy in this matter of declining to expressly attack the credentials of either board or ask the court to choose between the relative legitimacy of the competing boards.

{¶ 80} The only evidence submitted in opposition to summary judgment is the affidavit of Basil Mohamed Gohar, who avers that he is the current president of the board of directors of "Omar Mosque." The affidavit gives a condensed version of the mosque's history in Central Ohio and the events leading to the rift underlying the present case. Much that is contained in the affidavit does not bear on this case in its current posture, including the respective relations of the factions with two affiliated religious bodies, the Islamic Society of Greater Columbus and the North America Islamic Trust, Inc. Much of the affidavit also addresses the purported personal motives of the Khan/Ball faction, which lie outside the personal knowledge of the affiant. Pertinent to the case as it is now postured, however, is the following:

> Concerns that were expressed by the Ball/Khan respondents in 2011 were discussed in open community meetings, taken seriously, and resolved in short order within our organization. For example, elections for Directors have been held every two years, beginning in 2012. The elections are overseen by independent elections committees, according to established procedures set forth in our Constitution. Our Constitution has always been available for viewing by congregations [sic] members, and it is available on our website. Our Directors are educated on the requirements of R.C. Chapter 1702, and we have always worked hard to ensure compliance with Ohio law. Also, we have established formal requirements for voting membership, and we have a formal roster of voting members.

(Gohar Aff. at ¶ 4.)

{¶ 81} Based on the pleadings and the limited evidence adduced in support of and in opposition of summary judgment, the magistrate makes the following findings of fact:

1. Relator Michael DeWine is the duly elected, qualified, and acting Attorney General of the state of Ohio.

2. Relator brings this action pursuant to the authority and procedures set forth in R.C. Chapter 2733.

3. Respondent Omar Mosque, Inc. is a nonprofit corporation organized in 2007 under the laws of the state of Ohio, with its principal place of business in Franklin County, Ohio.

4. The 2007 articles of incorporation for Omar Mosque, Inc. name an initial board of directors for a two-year term. The initial board continued to govern the mosque beyond 2009.

5. Differences between members of the congregation arose in relation to construction of improvements to the mosque building, culminating in separate meetings in October 2011 at which two competing boards were elected by the respective factions.

6. Omar Mosque, Inc. is currently represented as respondent in this action by two sets of legal counsel representing two factions, each claiming to constitute the lawfully-elected board of directors of the nonprofit corporation.

7. In 2011 the Khan/Ball board approached JPMorgan Chase Bank, where Omar Mosque, Inc.'s bank accounts were situated, seeking control of donated funds on deposit.

8. The Reash/Brey board then initiated case No. 11CV-14615 in the Franklin County Court of Common Pleas with a complaint seeking damages and equitable relief. The complaint alleged that the members of the Reash/Brey board were the lawful board members of Omar Mosque, Inc., and named the members of the Khan/Ball board as defendants.

9. The trial court, in case No. 11CV-14615, accepted an agreed entry to interplead the funds held by JPMorgan Chase. The $432,313.19 in funds interpleaded

with the clerk of courts consists principally of donations by members of the congregation to pay for renovations and improvements to the mosque building.

10. Mediation by the trial judge in case No. 11CV-14615 yielded no result, and on August 16, 2012, the trial court entered judgment sua sponte dismissing the case for lack of subject-matter jurisdiction.

11. On appeal, this court affirmed in part the trial court's August 16, 2012 decision in case No. 11CV-14615 with the following language:

> The trial court does not possess the authority necessary to determine which board of directors is validly in office.

*Masjid Omar Ibn El Khattab Mosque*, 2013-Ohio-2746 at ¶ 25.

12. This court's decision on appeal did reverse the trial court to the extent that the trial court was instructed to vacate its entry dismissing the action and instead enter a stay pending resolution of the dispute via separate proceedings in quo warranto:

> Once a judgment in quo warranto is obtained, the prevailing side must be able to file a motion with the trial court requesting an order awarding the interpleaded funds to it.

*Id.* at ¶ 29. On remand, the trial court entered the appropriate stay on July 1, 2013.

13. In the interim, the Khan/Ball board attempted to bring an original action before this court in quo warranto on April 20, 2012 to remove the Reash/Brey board. This court eventually held that the relators in that action did not have standing to institute a quo warranto action in their individual capacities. *State ex rel. Salim v. Ayed,* 10th Dist. No. 12AP-356, 2013-Ohio-4880, *affirmed*, 141 Ohio St.3d 129, 2014-Ohio-4736.

14. The trial court has denied several motions brought by the Reash/Brey board seeking reactivation of case No. 11CV-14615. The latest such denial is currently on appeal before this court and subject to a stay pending resolution of this quo warranto action. *Masjid Omar Ibn El Khattab Mosque, Inc. v. Salim*, 10th Dist. No. 15AP-22 (Aug. 28, 2015 journal entry).

15. Through the course of discussions with the attorney general's office prior to filing this matter, the parties have submitted competing voting-membership lists that cannot be reconciled.

16. Paragraph 11 of the attorney general's complaint for a writ of quo warranto alleges as follows: "Upon information and belief, from 2007 through at least September 2011, Omar Mosque, Inc. did not maintain a record of its members containing the name and address of each member, the date of admission to membership, and, if members are classified, the class to which the member belongs." The answer filed by the Reash/Brey board expressly denies this allegation.

17. Paragraphs 8, 9, and 10 of the complaint allege that, pursuant to the 2007 articles of incorporation, the initial board was to serve through the end of 2009, but nonetheless continued to govern beyond that term. The answer filed by the Reash/Brey board admits this to the extent that the two-year terms are stated in the articles of incorporation, and the board continued to serve, but denies that the extended terms did not comply with the corporation's bylaws or constitution.

18. Paragraph 13 of the complaint alleges that "no special or annual meeting of the members of Omar Mosque, Inc. was held in either 2009 or 2010 for purposes of electing individuals to serve on the board of directors for Omar Mosque, Inc. in either 2010 or 2011." The answer filed by the Reash/Brey board admits this allegation.

19. Neither respondent faction has factually established that voting membership requirements and procedures were in place for the nonprofit corporation, or to what extent they were enforced or exercised during the period between corporate inception in 2007 to the time of the election of competing boards in late 2011. The affidavit of Basil Mohamed Gohar establishes that such voting requirements have been defined and respected by the Reash/Brey board since 2012, causing the magistrate to conclude that these were absent, ill-defined, or ignored prior to that time.

20. The parties agree that, despite the inability to access the considerable sum now interpleaded with the clerk of courts, the religious, financial, and temporal affairs of the congregation remain relatively undisturbed by the ongoing factional dispute and formation of competing boards. The Reash/Brey board continues to manage most day-to-day aspects of the organization's activity without significant input from the Khan/Ball board.

21. In light of the stable management provided by the Reash/Brey board, and the Khan/Ball board's willingness to efface itself from the day-to-day operation of the mosque, the oversight of trustees or a receiver in this case may be limited to resolution of the current corporate dysfunction and need not excessively intrude into the religious affairs of the mosque.

22. The attorney general is charged, inter alia, with inquiring into any abuses of charitable donations. *Brown v. Concerned Citizens for Sickle Cell Anemia Inc.,* 56 Ohio St.2d 85, 90-91 (1978).

23. While in the present case there is no allegation of abuse in the sense of misdirection of donated funds towards improper parties, the underlying dispute centers on the right to control funds donated for the charitable purpose of improving a place of worship. Those funds currently cannot be applied to their intended purpose.

Conclusions of Law:

{¶ 82} Based on these facts and undisputed allegations in the attorney general's complaint, the present situation can be summarized as follows: (1) the core dispute between the two factions claiming to represent Omar Mosque, Inc. is which board of directors has the authority to govern and act on behalf of the nonprofit corporation; (2) pursuant to previous decisions that stand as the law of the case, this dispute may only be resolved pursuant to a quo warranto action by the Ohio Attorney General or Franklin County prosecutor; and (3) the attorney general, as relator in this action, has chosen, at least with respect to the present motion for summary judgment, to only pursue dissolution of the corporation under R.C. 2733.02 and 2733.20 for failure to comply with various statutory requirements; the attorney general expressly does not seek the alternative quo warranto remedy of ouster of a board under R.C. 2733.01[1] while retaining

---

[1] "A civil action in quo warranto may be brought in the name of the state:

(A) Against a person who usurps, intrudes into, or unlawfully holds or exercises a public office, civil or military, or a franchise, within this state, or an office in a corporation created by the authority of this state;

the current corporate organization. The complementary observation to this last point is that the attorney general has thereby refrained from treading closer to the exclusive religious domain of the religious entity by attempting to remove one board in preference to the other, given the possibility that the differences between the factions may reflect some element of spiritual or doctrinal conflict.

{¶ 83} The distinction between any underlying theological dispute and a controversy subject to civil law is, of course, paramount.  " 'First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice.' "  *Serbian Orthodox Church Congregation of St. Demetrius v. Kelemen,* 21 Ohio St.2d 154, 157 (1970), quoting *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* (1969), citing *School Dist. of Twp. of Abington, PA v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, (1963).

> "If civil courts undertake to resolve such controversies in order to adjudicate a property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern. Because of these hazards, the First Amendment enjoins the employment or organs of government for essentially religious purposes."

*Kelemen* at 157*,* quoting *Presbyterian Church,* citing *Abington, PA.*

{¶ 84} The magistrate therefore notes that before exercising judicial authority in this dispute, the court must make sure to leave religious authorities the "power to decide

---

(B) Against a public officer, civil or military, who does or suffers an act which, by law, works a forfeiture of his office;

(C) Against an association of persons who act as a corporation within this state without being legally incorporated."  R.C. 2733.01.

for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 116 (1952). The magistrate will address the civil controversy before him "only by reference to the provisions of the Code of Regulations and By-Laws of the corporation not for profit, the corporate laws of this state, and any other secular instruments not requiring the resolution of religious tenets or doctrine." *Kelemen* at 162. Despite the fact that the arguments of the competing respondents are often rooted in their relative claims to legitimacy and tend to evade the attorney general's arguments relating to the failure to comply with corporate formalities, the magistrate will strive to limit the legal issues appropriately and avoid reference to allegations of misfeasance.

{¶ 85} The matter is before the magistrate on a motion for summary judgment. A court will grant summary judgment under Civ.R. 56 when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). The moving party must identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280 (1996).

{¶ 86} The ultimate goal of quo warranto proceedings under R.C. Chapter 2733 is to protect the public and the integrity of state sovereignty through the respect of applicable constraints on corporate conduct. *State ex rel. Crabbe v. Thistle Down Jockey Club, Inc.,* 114 Ohio St. 582, 591, 598 (1926). "[U]nder the common law, the basic

purpose of a quo warranto proceeding was to protect the public against the abuse of corporate power and the usurpation of the state's sovereign authority." *Stewart v. Bur. of Workers' Comp.,* 11th Dist. No. 2009-P-0003, 2009-Ohio-4255, ¶ 9. While it first arose as a historical writ under common law, the writ of quo warranto is now governed in Ohio by R.C. 2733.01 et seq. R.C. 2733.02 addresses the form of the writ now before the court, and provides as follows:

> A civil action in quo warranto may be brought in the name of the state against a corporation:
>
> (A) When it has offended against a law providing for its creation or renewal, or any amendment thereof;
>
> (B) When it has forfeited its privileges and franchises by nonuser;
>
> (C) When it has committed or omitted an act which amounts to a surrender of its corporate rights, privileges, and franchises;
>
> (D) When it has misused a franchise, privilege, or right conferred upon it by law, or when it claims or holds by contract or otherwise, or has exercised a franchise, privilege, or right in contravention of law;
>
> (E) When any application for a license to transact business in this state filed by a foreign corporation, any articles of incorporation of a domestic corporation or any amendment to them, or any certificate of merger or consolidation which set forth a corporate name prohibited by the Revised Code, has been improperly approved and filed.

{¶ 87} R.C. 2733.20 furnishes the executory directive once a writ of quo warranto issues, and provides as follows:

> When, in an action in quo warranto, it is found and adjudged that, by an act done or omitted, a corporation has surrendered or forfeited its corporate rights, privileges, and franchises, or has not used them during a term of five years, judgment shall

> be entered that it be ousted and excluded therefrom, and that it be dissolved.

{¶ 88} No Ohio case factually on point applying the remedy of quo warranto to dissolve a *religious* nonprofit corporation has been advanced by the parties or discovered by independent research. Cases ousting other types of nonprofit corporations for failure of their officers or promoters to comply with corporate formalities, however, may be found, and the Supreme Court of Ohio has approved of application of R.C. 2733.02 and 2733.20 in such a case: "[W]e hold that when, in an action in quo warranto, it is found and adjudged that a corporation has violated R.C. 2733.02(A) by offending against a law providing for its own creation, R.C.2733.20 requires that judgment be entered that the corporation be entirely ousted and excluded from its privileges, rights and franchises, and that it be dissolved." *State ex rel. Falke v. Montgomery Cty. Residential Dev., Inc.,* 40 Ohio St.3d 71, 73-74 (1988) (Ordering dissolution of nonprofit group home operator for failure to comply with corporate formalities in process of incorporation). The extent of such an "ouster" should be commensurate with that necessary to provide appropriate relief. *Id.* at 72: "It is only where actions in quo warranto have been brought for misuse of corporate franchises, or for exercise of powers not conferred by law, that the courts have ordered the offending corporations to be partially rather than entirely ousted." *Id.*, citing *State, ex rel. Colburn v. Oberlin Bldg. & Loan Assn.*, 35 Ohio St. 258 (1879); *State, ex rel. Price v. Columbus, Delaware & Marion Elec. Co.*, 104 Ohio St. 120 (1922).

{¶ 89} The attorney general argues that a nonprofit corporation that remains unable to access $432,313.19 in charitable contributions, even after extensive litigation between factions that have developed amongst its members, has on its face committed or omitted an act that amounts to a surrender of its corporate rights, privileges, and

franchises, and that as a result some form of dissolution is warranted. The magistrate finds as matter of law that this circumstance alone would not warrant issuance of a writ without reference to facts supporting the conditions under which the lack of access developed. The magistrate further finds, however, that the present situation is a direct result of the organization's failure to comply with requisite corporate formalities, and this failure underlies the subsequent impasse in corporate governance. Together, the failure to conform to corporate requirements and the resulting loss of control over charitable funds may support issuance of the writ requested by the attorney general.

{¶ 90} With respect to the interpleaded funds, the magistrate finds that, without reference to or reliance on any of the allegations of misfeasance and nonfeasance advanced amongst the factions as justification for their inability to reconcile, the course of all parallel litigation in this matter has indisputably reached an impasse. The corporation is currently unable to access the interpleaded funds that were conferred on it by donors with the expectation that the corporation would apply such funds to construction, expansion, and improvement of their place of worship. Repeated motions by the Reash/Brey board for release of the interpleaded funds have, inevitably, been rejected by the trial court on the basis of this court's prior determination on appeal that the trial court had no subject-matter jurisdiction to choose between competing boards. The latest appeal from such a rejection is pending and stayed before this court in *Masjid Omar Ibn El Khattab Mosque v. Salim,* 10th Dist. No. 15AP-22. There is no prospect of resolving the impasse through the current legal path chosen by the two respondent factions, i.e., through continued reciprocal assertions that one side has a superior right to the funds.

{¶ 91} The magistrate further finds that the dispute would not have arisen, or at least not have caused the corporation to lose control of its funds, had the corporation complied with statutory requirements regarding membership and annual meetings. R.C. 1702.16 provides that an Ohio nonprofit corporation shall hold annual meetings of voting members "for the election of directors and the consideration of reports." R.C. 1702.13 governs the requirement for establishing membership and keeping records thereof:

> (A) The corporation shall maintain a record of its members containing the name and address of each member, the date of admission to membership, and, if members are classified, the class to which the member belongs.
>
> * * *
>
> (C) Membership in a corporation may be terminated in the manner provided by law, the articles, or the regulations, and upon the termination of membership for any cause, such fact and the date of termination shall be recorded in the corporation's membership records.
>
> * * *
>
> (G) Unless otherwise provided in the articles or regulations of a corporation, all members have the same membership rights and privileges.

{¶ 92} The pleadings and evidence establish that Omar Mosque, Inc. did not conform with these statutorily required corporate formalities. The existence of such statutory requirements is predicated on the need to avoid precisely the type of corporate dysfunction exhibited in this case: without definition of voting membership, regular board meetings, and up-to-date membership roster, the direction of the corporate entity is no longer supported through recordable action. Whether or not the initial board provided benign direction or governed with a great degree of informal support or tacit ratification

of its actions, a corporation thus governed without respect for formalities leaves itself vulnerable to structural dislocation when some measure of that support is lost.

{¶ 93} The magistrate therefore finds that relator, the Attorney General of the State of Ohio, is entitled to a writ of quo warranto pursuant to R.C. 2733.02 and 2733.20 to pursue the judicial dissolution of Omar Mosque, Inc. under R.C. 1702.52(A)(1), 2733.21, and 2733.22. The attorney general shall consult with the respondent factions and submit a list of proposed trustees pursuant to R.C. 2733.21. After appointment of trustees by this court, this court will remand the matter to the court of common pleas under case No. 11CV-14615 for further proceedings, as authorized by R.C. 1702.52(A)(1) and 2733.22. The court of common pleas will oversee the dissolution of Omar Mosque, Inc. and, as cooperation among the parties may warrant, the constitution of a successor entity to carry on the business aspect of the mosque. The court of common pleas shall have complete discretion to proceed through the appointment of a receiver under R.C. 1702.52 and 2735.01(A)(6) or to continue the appointment of trustees pursuant to R.C. 2733.21 through 2733.28 to oversee the constitution of a successor entity.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically

objects to that factual finding or legal conclusion as required
by Civ.R. 53(D)(3)(b).