DeWine, J.
*513 {¶ 1} This is an appeal from the grant of a writ of quo warranto. At the center of the dispute is a power struggle over the control of a Columbus mosque, Omar Ibn El Khattab Mosque, Inc. ("Omar Mosque" or "the corporation").
{¶ 2} In the years following its inception, the corporation failed to comply with corporate formalities and as a result lacked procedures for resolving internal disagreements. When disputes arose, a rift formed between members of the mosque's congregation, and competing boards of directors were elected claiming authority over the corporation and its charitable funds. The funds were ultimately frozen and transferred to the Franklin County Clerk of Courts pending a resolution of the leadership struggle.
{¶ 3} After years of inconclusive litigation between the factions, the attorney general brought an action for a writ of quo warranto in the Tenth District Court of Appeals seeking to dissolve the corporation. Two sets of litigants purporting to represent the corporation filed answers to the complaint. The Tenth District granted the writ, concluding that the corporation's failure to adhere to corporate formalities caused internal dysfunction and the loss of access to the corporation's charitable funds. The Tenth District therefore remanded the matter to the court of common pleas to supervise the winding down of the corporation and appoint a trustee or receiver to oversee the creation of a successor entity. Representatives of the initial board appealed.
*514 {¶ 4} We agree with the conclusions of the court of appeals, so we affirm the judgment below and remand for proceedings consistent with this opinion.
*229 I. Background
A. Internal disputes and the rise of competing boards
{¶ 5} Omar Ibn El Khattab Mosque, Inc., is an Ohio nonprofit corporation. It was formed in 2007 after the Islamic Society of Greater Cincinnati ("Islamic Society"), which had previously governed the mosque, decided to restructure its organization. The changes were memorialized in a document titled "Referendum on Reorganizing and Restructuring ISGC" ("the referendum"). The referendum provided for the formation of a nonprofit organization called Omar Mosque Association to operate separately from the Islamic Society and carry out religious and philanthropic activities at the mosque. Seven individuals were named to serve as the initial board of directors ("initial board" or "the Reash/Brey faction") "for a term ending on 12/31/2009."[1]
{¶ 6} The corporation filed its initial articles of incorporation in June 2007. The board also began raising money for an expansion project for the mosque. By the time construction began in September 2011, the board had raised around $400,000 for the project. The funds were deposited into Omar Mosque's account at JP Morgan Chase Bank ("Chase Bank").
{¶ 7} Disagreements flared up among members of the congregation. One area of dispute centered on the initial board's continued governance beyond its initial term and failure to hold annual elections. In response, the initial board held a special meeting on October 8, 2011, at which the congregation was asked to select from two possible resolutions: (1) retain the initial board members and add four new seats by election or (2) elect a completely new board. The majority of attendees voted for the first option. Dissatisfied with the result, opponents of the initial board held a second election on October 22, at which attendees elected a competing board of directors ("the second board" or the "Khan/Ball faction").
{¶ 8} The second board drafted a resolution permitting it to take control of the corporation's bank accounts, and Chase Bank converted signing authority over to the purported new officers. When the initial board learned of the situation and filed a formal dispute, Chase Bank froze the accounts.
*515 B. Prior litigation
{¶ 9} The Reash/Brey faction-composed of members of the initial board-filed suit in the name of Omar Mosque against the second board. The suit alleged that they, the Reash/Brey faction, were the legitimate board members. Masjid Omar Ibn El Khattab Mosque v. Salim , Franklin C.P. No. 11-CV-14615. The Khan/Ball faction-representing members of the second board-counterclaimed and sought a declaratory judgment that they were the lawful representatives of the corporation. The court subsequently filed an agreed entry permitting Chase Bank to interplead and deposit with the clerk of courts $432,313.19 in funds from Omar Mosque's bank accounts. Masjid Omar Ibn El Khattab Mosque v. Salim , Franklin C.P. No. 11-CV-14615, 2012 Ohio Misc. LEXIS 5679 (Mar. 2, 2012).
{¶ 10} With that litigation in progress, the initial board announced that it would hold a new election. On April 21, 2012, a third board of directors was purportedly elected-none of the members of the initial or second board was on the third board.
*230 {¶ 11} The common pleas court sua sponte dismissed the case between the initial board and the second board. Masjid Omar Ibn El Khattab Mosque v. Salim , Franklin C.P. No. 11-CV-14615, 2012 WL 8717620, 2012 Ohio Misc. LEXIS 5674 (Aug. 16, 2012). The court concluded, "When a dispute arises between factions of a congregation over who has a legitimate right to control the congregation as a corporate entity, the action must be brought as an action seeking a writ of quo warranto." Id. at *5. The court noted that pursuant to R.C. 2733.04 and 2733.05, a quo warranto action must be filed by the attorney general or a prosecuting attorney, and the complaint in that case failed to comply because it was brought in the name of Omar Mosque. Moreover, the court determined that under R.C. 2733.03, a common pleas court lacks subject-matter jurisdiction over quo warranto actions.
{¶ 12} The appellate court affirmed the judgment of the common pleas court that, regardless of how the parties styled their arguments, the dispute centered on which board rightfully controlled the corporation and must therefore be resolved through a quo warranto action. Masjid Omar Ibn El Khattab Mosque v. Salim , 10th Dist. Franklin No. 12AP-807, 2013-Ohio-2746, 2013 WL 3341217, ¶ 21. But the appellate court reversed the trial court's decision to dismiss the case, holding instead that the case should be stayed until a judgment in quo warranto is issued so that the rightful board may reclaim access to Omar Mosque's interpleaded funds. Id. at ¶ 29.
{¶ 13} Thus, the Khan/Ball faction brought a quo warranto action in the Tenth District Court of Appeals. But the court dismissed that case for lack of standing, noting that the quo warranto action must be brought by the attorney general or a prosecuting attorney.
*516 State ex rel. Salim v. Ayed , 10th Dist. Franklin No. 12AP-356, 2013-Ohio-4880, 2013 WL 5963029, ¶ 21 ; see R.C. 2733.04 and 2733.05. We affirmed, holding that "private individuals have no standing to institute an action in quo warranto to oust officers of a private, not-for-profit corporation." State ex rel. Salim v. Ayed , 141 Ohio St.3d 129, 2014-Ohio-4736, 22 N.E.3d 1054, ¶ 1.
{¶ 14} Meanwhile, the Reash/Brey faction filed numerous motions in the stayed common pleas case seeking to reactivate the case and release the interpleaded funds. See Masjid Omar Ibn El Khattab Mosque v. Salim , Franklin C.P. No. 11-CV-14615 (Dec. 15, 2014). The common pleas court denied the requests, declining to release the funds until a determination was made as to which group had governing authority over Omar Mosque. The Reash/Brey faction appealed the trial court's judgment denying the motion to reactivate the case and release the interpleaded funds, but the Tenth District stayed the appeal to allow the attorney general time to decide whether to bring a quo warranto action. Masjid Omar Ibn El Khattab Mosque v. Salim , 10th Dist. Franklin No. 15AP-22 (Feb. 18, 2015).
C. The present action
{¶ 15} Finally, in October 2015, the attorney general brought this action in the Tenth District Court of Appeals seeking a writ of quo warranto dissolving the corporation and appointing a receiver. R.C. 2733.02 authorizes a quo warranto action against a corporation:
(A) When it has offended against a law providing for its creation or renewal * * *;
* * *
(C) When it has committed or omitted an act which amounts to a surrender of its corporate rights, privileges, and franchises;
*231 (D) When it has misused a franchise, privilege, or right conferred upon it by law * * *.
Specifically, the complaint alleged that Omar Mosque violated three rules of corporate governance prior to 2012: failing to maintain a record of its members as required by R.C. 1702.13(A) ; failing to maintain accurate and complete accounts and minutes under R.C. 1702.15 ; and failing to hold an annual or special meeting in 2009 and 2010 for the election of directors to serve in 2010 and 2011, as required by R.C. 1702.16.
{¶ 16} Based on these alleged violations, the attorney general sought an order dissolving the corporation under R.C. 1702.52 and 2733.20. The attorney general further requested that the court appoint a receiver to oversee the dissolution of the corporation and the creation of a successor entity. Both the Reash/Brey *517 faction and the Khan/Ball faction filed answers, purportedly on behalf of Omar Mosque.
{¶ 17} The attorney general filed a motion for summary judgment and evidence in support. Both factions responded to the attorney general's motion for summary judgment-the Khan/Ball faction supported the motion, while the Reash/Brey faction opposed it. The Reash/Brey faction also filed a cross-motion for partial summary judgment, seeking a declaration that the members of the second board had not been validly elected.
{¶ 18} The magistrate recommended that the court grant the attorney general's motion for summary judgment. In its decision, the magistrate agreed with the attorney general that selecting one board for removal risked "treading closer to the exclusive religious domain of the religious entity * * *, given the possibility that the differences between the factions may reflect some element of spiritual or doctrinal conflict." 2017-Ohio-4453, 2017 WL 2687435 at ¶ 82. The magistrate found that Omar Mosque failed to maintain membership records, as required by R.C. 1702.13, or hold annual meetings for the election of directors, as required by R.C. 1702.16. And the magistrate determined that the corporation's failure to adhere to those corporate formalities led to the rise of competing boards and subsequent inability to reclaim the corporation's funds:
[T]he present situation is a direct result of the organization's failure to comply with requisite corporate formalities, and this failure underlies the subsequent impasse in corporate governance. Together, the failure to conform to corporate requirements and the resulting loss of control over charitable funds may support issuance of the writ requested by the attorney general.
Id. at ¶ 89. The magistrate therefore recommended the issuance of a writ of quo warranto, the appointment of a trustee or receiver, and referral of the case to the common pleas court to oversee the constitution of a successor entity.
{¶ 19} The court of appeals adopted the magistrate's findings of fact and conclusions of law, granted the writ, and referred the case to the common pleas court to oversee the dissolution of the corporation and appoint a receiver or trustee to manage the constitution of a successor entity.
{¶ 20} The Reash/Brey faction timely appealed.
II. Legal Analysis
{¶ 21} "Corporations owe their existence to the written laws of the state" and are regulated and may be terminated in the manner provided by law.
*232 State ex rel. Crabbe v. Thistle Down Jockey Club , 114 Ohio St. 582, 592-593, 151 N.E. 709 (1926). The writ of quo warranto is governed by R.C. Chapter 2733.
*518 {¶ 22} R.C. 2733.02 permits the state to pursue an action in quo warranto against a corporation if that corporation has failed in certain respects to perform its essential functions. Dissolution of the corporation is required when the court determines that "by an act done or omitted, [the] corporation has surrendered or forfeited its corporate rights, privileges, and franchises." R.C. 2733.20 ; see also R.C. 2733.02(C).
{¶ 23} In granting summary judgment, the court of appeals concluded that the corporation failed to comply with statutorily mandated corporate formalities and that these failures caused the entity to lose control of its charitable funds. We begin by reviewing the statutory violations found by the court of appeals.
A. Statutory violations
1. Annual meetings
{¶ 24} The court of appeals determined that the corporation violated the law by failing to hold annual meetings to conduct elections. Generally, an annual meeting for the election of directors "shall be held on a date designated by or in the manner provided for in the articles or the regulations." R.C. 1702.16. If the corporation's articles or regulations do not specify, then "the annual meeting shall be held on the first Monday of the fourth month following the close of each fiscal year of the corporation." Id.
{¶ 25} The Reash/Brey faction concedes that no such meetings were held in 2009 or 2010, and therefore no elections occurred during that time. But they contend that because the articles of incorporation did not specifically require elections, they had no duty to carry them out.
{¶ 26} This argument ignores the statute. R.C. 1702.16 plainly requires annual meetings; it merely grants corporations flexibility in determining the manner in which the meetings will be conducted. A corporation may not avoid the statutory requirements simply by omitting election directives from its articles of incorporation.
{¶ 27} The Reash/Brey faction also argues that the claim based on a failure to hold annual meetings is barred by the statute of limitations. "Actions in quo warranto against a corporation for forfeiture of its charter shall be commenced within five years after the act complained of was done or committed." R.C. 2733.35. This action commenced when the attorney general filed the complaint on October 13, 2015. The Reash/Brey faction concedes that the corporation's failure to hold an annual meeting extended through all of calendar year 2010, thus the action was commenced within the statute-of-limitations period.
{¶ 28} We therefore conclude that the evidence in the record supports the appellate court's determination that the initial board violated R.C. 1702.16.
*519 2. Membership lists and books and records of account
{¶ 29} An Ohio corporation must "maintain a record of its members containing the name and address of each member, the date of admission to membership, and, if members are classified, the class to which the member belongs." R.C. 1702.13(A). Corporations are also required to keep "correct and complete books and records of account," along with minutes of proceedings. R.C. 1702.15. The Tenth District determined that the initial board violated R.C. 1702.13 and that the board's "lack of record keeping * * * also resulted in a violation of R.C. 1702.15." 2017-Ohio-4453, 2017 WL 2687435, at ¶ 40.
*233 {¶ 30} We conclude that the record does not reveal a genuine issue of material fact on these matters. In an affidavit submitted by the Reash/Brey faction in opposition to the attorney general's summary-judgment motion, Basil Mohamed Gohar (who identified himself as the current president of the board of directors of Omar Mosque) averred that "[c]oncerns that were expressed by the Ball/Khan Respondents in 2011 were discussed in open community meetings, taken seriously, and resolved in short order within our organization." He went on to explain that elections had been held since 2012 and that the corporation has established "formal requirements for voting membership" and "a formal roster of voting members." The magistrate inferred from this affidavit that the membership lists were not in place prior to 2012. Id. at ¶ 81 (19).
{¶ 31} Gohar's affidavit further supports the magistrate's conclusion by indicating that the second election was held with the intention of addressing membership issues and establishing a membership list and that competing membership lists came into existence as a result. Indeed, the Reash/Brey faction concedes these statutory violations in an affidavit attached to its cross-motion for summary judgment. In the affidavit, Ghassan Bin Hammam affirmed that after the congregation voted on October 8 whether to retain the current board with an additional four members or select an entirely new board, the elections for the option chosen "would take place six months after a membership roll was established."
{¶ 32} The Reash/Brey faction also argues that this claim is barred by the statute of limitations. But the magistrate found that the failure to maintain membership lists persisted until 2012, well within the statutory period for filing this suit.
{¶ 33} Thus, the evidence in the record supports the finding that the initial board violated R.C. 1702.13(A) and 1702.15.
B. Causation
{¶ 34} The attorney general is entitled to the requested writ seeking dissolution of the corporation if he demonstrates that "by an act done or omitted, [the]
*520 corporation has surrendered or forfeited its corporate rights, privileges, and franchises." R.C. 2733.20. Both the magistrate and the appellate court concluded that the corporation's failure to adhere to the statutory requirements allowed a situation to develop in which competing factions vied for control over the corporation's board and charitable funds. And the resulting confusion over control of the corporation led to the funds being frozen and transferred to the court of common pleas. Thus, the appellate court concluded that the initial board's failures amounted to a surrender of the corporation's rights and privileges necessitating the remedy of dissolution.
{¶ 35} The Reash/Brey faction argues that the subject of the dispute was the renovation project-not the board's failure to comply with the statutory formalities. Thus, it contends, the board's failure to comply with the statutory requirements could not have been the cause of the rift. But that argument misunderstands the appellate court's reasoning. As the court explained:
These basic statutory requirements that Omar Mosque, Inc. violated would protect a corporation from the confusion and internal paralysis that this case has shown resulted when an internal division arose. Without a defined voting membership, regular meetings, and up-to-date membership roster, the authority of the board, and thus the legitimacy of the *234 corporation itself, is no longer supported through recordable action.
2017-Ohio-4453, 2017 WL 2687435, at ¶ 41. "Whether or not the initial board provided benign direction or governed with a great degree of informal support or tacit ratification of its actions, a corporation thus governed without respect for formalities leaves itself vulnerable to structural dislocation when some measure of that support is lost." Id. at ¶ 92.
{¶ 36} We agree with that analysis. Had the corporation adhered to the requisite formalities, there would have been a mechanism in place for addressing concerns, leadership would have been clearly established, and there would have been no question as to who had control over the funds. Instead, the corporation has been unable to access the $432,313.19 in charitable funds raised for the benefit of the mosque and its congregation-which was a central reason for the nonprofit's formation in the first place. These funds "have yet to be used for their intended purpose and have been inaccessible" since 2011. Id. at ¶ 38. The competing factions have since been engaged in continuous litigation seeking a declaration as to which of them has sole access to-and control over-the funds. Attempts at reconciliation have been unsuccessful. Id. at ¶ 33 (25).
{¶ 37} It is time the mosque's funds be put to use. We therefore affirm the judgment of the court of appeals granting the writ of quo warranto and ordering *521 the dissolution of the corporation and we remand the matter to the court of appeals for the appointment of trustees. The appellate court shall then return the case to the court of common pleas to oversee the winding down of the corporation. The common pleas court shall have discretion to proceed through the appointment of a receiver or the continued appointment of trustees to oversee the establishment of a successor entity.
Judgment affirmed and cause remanded.
O'Donnell, Kennedy, and DeGenaro, JJ., concur.
O'Connor, C.J., dissents, with an opinion joined by French and Fischer, JJ.
O'Connor, C.J., dissenting.
{¶ 38} I dissent.
{¶ 39} The facts in this case do not lend themselves to the issuance of a quo warranto writ for the purpose of dissolving Omar Ibn El Khattab Mosque, Inc. ("the corporation"). Even if the corporation failed to observe corporate formalities, it is not evident that such a failure would justify issuing the writ as requested.
{¶ 40} Quo warranto will issue only if a corporation has surrendered or forfeited its corporate rights "by an act done or omitted" by the corporation. (Emphasis added.) R.C. 2733.20. The facts of this case do not establish a causal link between the failure to observe corporate formalities and the congregation's schism and loss of the charitable funds.
{¶ 41} The majority purports to see a causal connection because
[h]ad the corporation adhered to the requisite formalities, there would have been a mechanism in place for addressing concerns, leadership would have been clearly established, and there would have been no question about who had control over the funds.
Majority opinion at ¶ 36. Putting aside the question whether the evidence establishes a failure to adhere to requisite formalities, to whom would there have been "no question" regarding legal control of the funds?
*235 The evidence provides no basis to believe that a formal membership list and regular elections would have prevented respondent-appellee, the Khan/Ball faction of the corporation, from deciding to conduct its own meeting, elect its own officers, and assert its control.
{¶ 42} Perhaps more stringent corporate bookkeeping would have allowed JP Morgan Chase Bank ("the bank" or "Chase") to assess the rightful owner of the corporate funds, had the bank been inclined to undertake the inquiry. But it is *522 abundantly clear that the bank did not want to place itself in the middle of the dispute. In an agreed entry to interplead the funds, the parties stated that Chase had closed the accounts because the account agreement between Chase and the corporation provided that Chase " 'may file an action in interpleader with respect to any Account where we have been notified of disputed claims to that Account. If any person asserts that a dispute exists, we are not required to determine whether that dispute has merit * * * .' " Masjid Omar Ibn El Khattab Mosque v. Salim , Franklin C.P. No. 11-CV-14615, 2012 Ohio Misc. LEXIS 5679, *2 (Mar. 2, 2012), quoting the account agreement. The suggestion that the bank would have turned over the funds to one faction or the other if the corporate documents had been clearer is unreasonable.
{¶ 43} Nor would compliant corporate documents have induced the common pleas court to release those funds. The trial court, the court of appeals, and this court consistently dismissed the previous cases involving these factions and their claims to ownership of the charitable funds for lack of subject-matter jurisdiction, not because the factions were unable to prove their right to the money. And the money remains frozen because a proper lawsuit to resolve the dispute has yet to be filed.
{¶ 44} Relator-appellee, Ohio Attorney General Michael DeWine, argues that although there is no precedent for issuing a writ of quo warranto to dissolve a corporation under the facts of this case, it is necessary for the court to do so here because "the current case is unique." He assures this court that
[i]n most instances, a corporation's failure to maintain a record of its members or hold annual meetings would not amount to a surrender of its corporate rights, privileges, and franchises. In most instances, however, such a failure would not have resulted in a corporation being legally incapable of accessing $432,313.19 in corporate funds.
{¶ 45} But in refusing to consider the relative merits of each faction's claim to legitimacy, the attorney general is devising a road map for individuals who would seek to destroy a nonprofit corporation. According to the majority's decision, a dissident faction could hold a sham election, draft (in the words of the attorney general) "a so-called 'resolution,' " present it to a bank with a policy like Chase's in order to freeze the funds, and then ask the attorney general to file a complaint for a writ of quo warranto dissolving the corporation. Corporate formalities may offer little relief, particularly facing a determined, fast-acting faction.
{¶ 46} In this case, by seeking to dissolve the corporation without taking a position as to which faction is in the right, the attorney general was forced to adopt a narrow theory of corporate misfeasance, one that the present evidence *523 does not support. The majority opinion also sets a precedent that should be of concern to all nonprofits, whether or not they strictly follow corporate formalities. For these reasons, I would reverse the appellate court's *236 decision and remand the case with instructions to deny the writ.
French and Fischer, JJ., concur in the foregoing opinion.

The factions are named for the attorneys representing each group: the Reash/Brey faction, representing members of the initial board; and the Khan/Ball faction, constituting members of the second board.