[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Yost v. Omar Ibn El Khattab Mosque, Inc.,* Slip Opinion No. 2019-Ohio-1958.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-1958

THE STATE EX REL. YOST, APPELLEE, *v.* OMAR IBN EL KHATTAB MOSQUE, INC., APPELLEE; OMAR IBN EL KHATTAB MOSQUE, INC., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Yost v. Omar Ibn El Khattab Mosque, Inc.,* Slip Opinion No. 2019-Ohio-1958.]

*Quo warranto—Writ of quo warranto may not issue when the party seeking the writ has not proved entitlement to it—Attorney general must commence a proper quo warranto action to oust one faction or the other—Motion for reconsideration granted—Judgment reversed.*

(No. 2017-1067—Submitted March 5, 2019—Decided May 23, 2019.)

APPEAL from the Court of Appeals for Franklin County,

No. 15AP-939, 2017-Ohio-4453.

ON MOTION FOR RECONSIDERATION.

_____

**Per Curiam.**

{¶ 1} This matter is before us as a result of a motion for reconsideration filed by the Reash/Brey[1] respondents-appellants, one of the factions purporting to represent Omar Ibn El Khattab Mosque, Inc. ("Omar Mosque" or "the corporation"). Relator-appellee, the Ohio attorney general,[2] and respondent-appellee, the Khan/Ball faction of the corporation, each filed memorandums opposing reconsideration.

{¶ 2} The Ohio attorney general commenced this case by filing a complaint for a writ of quo warranto in the Tenth District Court of Appeals seeking to dissolve the corporation. On December 20, 2018, we affirmed the decision of the Tenth District granting the writ and remanding the matter to that court with the instruction to appoint trustees and then return the case to the common pleas court to oversee the dissolution of the corporation. *State ex rel. DeWine v. Omar Ibn El Khattab Mosque, Inc.*, ___ Ohio St.3d ___, 2018-Ohio-5112, ___ N.E.3d ___ ("*Omar Ibn El Khattab Mosque I*").

{¶ 3} For the reasons set forth below, however, we grant the motion for reconsideration, vacate our decision in *Omar Ibn El Khattab Mosque I*, reverse the judgment of the court of appeals, and remand the case with instructions to deny the writ.

## I. Background

{¶ 4} Omar Ibn El Khattab Mosque, Inc., is an Ohio nonprofit corporation that was formed in 2007 as a separate entity from the Islamic Society of Greater Columbus ("ISGC") pursuant to a document titled "Referendum on Reorganizing and Restructuring ISGC" ("the referendum"). According to the pleadings that have

---

1. The Reash/Brey faction and the opposing group, the Khan/Ball faction, are named for the attorneys representing each group.
2. The previous Ohio attorney general, Michael DeWine, instituted this case. Dave Yost succeeded DeWine and is automatically substituted as relator-appellee in this case. *See* S.Ct.Prac.R. 4.06(B); App.R. 29(C)(1).

been submitted by the parties, the referendum established a nonprofit organization, called the Omar Mosque Association ("OMA"), to be responsible for religious and philanthropic activities at the mosque. The referendum named seven individuals as the initial board of directors ("initial board" or "the Reash/Brey faction") "for a term ending on 12/31/2009."[3] The referendum then provided, "This Board will be in charge of Omar Mosque and will write a Constitution and By-Laws for OMA to be ratified by its members no later than 12/31/2007."

{¶ 5} The corporation filed initial articles of incorporation with the Ohio secretary of state's office on June 21, 2007. Also in 2007, the board began to raise money for a construction/expansion project to improve the mosque. By September 2011, as construction was starting, the board had raised around $400,000 for the project. The funds were deposited into Omar Mosque's account at JP Morgan Chase Bank, N.A. ("Chase Bank"), and constituted 90 percent of the corporation's funds.

{¶ 6} The dispute underlying this writ action is a schism between the Reash/Brey faction and the Khan/Ball faction that resulted in an inability to access those funds. The factions disagree about the underlying cause of the schism. In the view of Ghassan Bin Hammam, a member of the Reash/Brey faction, the dispute began as a personal conflict between Ayed, one of the initial board members, and a concerned community member, Nasir Hassan. According to Bin Hammam, as the conflict escalated, "Mr. Hassan started to challenge the legitimacy of the Board." The "challenge [to] the legitimacy of the Board" concerned the fact that after the initial board was appointed, there were no further elections. The referendum purportedly stated that the term of the initial board would expire at the end of 2009, but the initial board continued to govern beyond that date. Bin

---

3. The initial board members included the members of the Reash/Brey faction: Mounir Ayed, Ghassan Bin Hammam, Nasser Kashou, Quassai Marashdeh, and Noorgul Dada.

Hammam, however, attested that the initial board governed past 2009 without complaint and "with [the] consensus of the community" because certain essential tasks, such as establishing a formal membership roll, had not been completed due to the press of other Omar Mosque projects. Basil Mohamed Gohar, who—according to the Reash/Brey faction—is the current president of the board of directors, attributes the division primarily to opposition from the Khan/Ball faction to the expansion project.

{¶ 7} For its part, the Khan/Ball faction failed to properly admit its evidence, but generally argues that the schism was caused by complaints from members of the Khan/Ball faction about the initial board's lack of transparency, failure to follow corporate formalities, refusal to hold elections, and the allegedly excessive salary paid to the Imam.

{¶ 8} In response to the concerns raised by members of the Khan/Ball faction, the initial board scheduled a special meeting for October 8, 2011. At the meeting, members could vote for one of two potential resolutions: either retain the initial board members and add four new seats by election or elect a completely new board. At the October 8 meeting, the majority of attendees voted for the first option. Dissatisfied with the outcome of the October 8 election, two weeks later—on October 22—members of the Khan/Ball faction convened its own meeting, at which attendees elected their own schismatic board of directors ("the second board").[4]

{¶ 9} The second board then drafted a resolution allowing it to assume control of the corporation's bank accounts at Chase Bank. Upon presentation of the second board's credentials as officers, Chase Bank transferred signing authority to those officers.

---

4. The second board included members of the Khan/Ball faction: Hamid Salim, Dr. Khaled Khamees, Mohammed Allouche, Dina Ali, Hagar Diab, Nihad Al Khalidi, and Fouad El Faour.

**{¶ 10}** On November 23, 2011, members from the initial board (a.k.a. the Reash/Brey faction) filed suit in the Franklin County Common Pleas Court in the name of Omar Mosque against the individual members of the second board (a.k.a. the Khan/Ball faction), seeking damages and equitable relief and alleging that they were the lawful board members. *Masjid Omar Ibn El Khattab Mosque v. Salim*, Franklin C.P. No. 11-CV-14615. The Khan/Ball faction counterclaimed and sought a declaratory judgment stating that the second board was the legitimate board of directors of the corporation.

**{¶ 11}** On February 16, 2012, the court of common pleas filed an agreed entry allowing Chase Bank to interplead and deposit with the clerk of courts $432,313.19, the amount on deposit from Omar Mosque's three bank accounts. *Masjid Omar Ibn El Khattab Mosque v. Salim*, Franklin C.P. No. 11-CV-14615, 2012 Ohio Misc. LEXIS 5679 (Mar. 2, 2012).

**{¶ 12}** On August 16, 2012, the court of common pleas sua sponte dismissed case No. 11-CV-14615. 2012 Ohio Misc. LEXIS 5674 (Aug. 16, 2012). The common pleas court determined that "[w]hen a dispute arises between factions of a congregation over who has a legitimate right to control the congregation as a corporate entity, the action must be brought as an action seeking a writ of quo warranto." *Id.* at *5.

**{¶ 13}** The court of appeals affirmed in part and reversed in part. *Masjid Omar Ibn El Khattab Mosque v. Salim*, 10th Dist. Franklin No. 12AP-807, 2013-Ohio-2746. The court of appeals agreed with the common pleas court that irrespective of how the parties framed the relief they were seeking, the core issue that would have to be decided was the validity of the election of the second board, which made it a quo warranto action. *Id*. at ¶ 21. However, the court of appeals also held that the case should have been stayed instead of dismissed, because the common pleas court still held Omar Mosque's funds and by dismissing the case,

the common pleas court made it impossible for the rightful faction (whichever one that turned out to be) to reclaim those funds. *Id*. at ¶ 29.

{¶ 14} On April 20, 2012, the Khan/Ball faction commenced a quo warranto action in the Tenth District Court of Appeals. The court's magistrate recommended dismissing the complaint for lack of standing because a quo warranto action must be filed by the attorney general, a prosecuting attorney, or a person claiming an individual right to an office. *State ex rel. Salim v. Ayed*, 10th Dist. Franklin No. 12AP-356, 2013-Ohio-4880, ¶ 60. The court of appeals agreed with and adopted the magistrate's conclusions of law and dismissed the complaint. *Id*. at ¶ 22. We affirmed. *State ex rel. Salim v. Ayed*, 141 Ohio St.3d 129, 2014-Ohio-4736, 22 N.E.3d 1054, ¶ 1.

{¶ 15} Meanwhile, on October 29, 2014, in the previously stayed Franklin County Common Pleas case No. 11-CV-14615, the Reash/Brey faction filed numerous motions asking the common pleas court to reactivate the case and to release Omar Mosque's funds. The common pleas court denied all the motions. *See Masjid Omar Ibn El Khattab Mosque v. Salim*, Franklin C.P. No. 11-CV-14615 (Dec. 15, 2014). The court explained that it could not release the funds until a determination was made as to which group was the legitimate governing authority of Omar Mosque. *Id*. The Tenth District Court of Appeals stayed consideration of that appeal to allow the attorney general time to decide whether to file a quo warranto action. *Masjid Omar Ibn El Khattab Mosque v. Salim*, 10th Dist. Franklin No. 15AP-22 (Feb. 18, 2015).

{¶ 16} On October 13, 2015, the attorney general filed suit against Omar Mosque in the Tenth District Court of Appeals. The complaint requested a writ of quo warranto dissolving the corporation and appointing a receiver. Pursuant to R.C. 2733.01(A), the attorney general *could* have proceeded against one faction or the other seeking to remove—or oust—one of the factions from the corporation. But instead of choosing sides, the attorney general elected to proceed under R.C.

6

2733.02, which authorizes a quo warranto action against a corporation in certain situations:

> (A) When it has offended against a law providing for its creation or renewal * * *;
>
>     * * *
>
> (C) When it has committed or omitted an act which amounts to a surrender of its corporate rights, privileges, and franchises;
>
> (D) When it has misused a franchise, privilege, or right conferred upon it by law * * *.

{¶ 17} Specifically, the complaint alleged that Omar Mosque violated three rules of corporate governance: (1) failing to maintain a record of its members, (2) failing to maintain complete accounting records and minutes, and (3) failing to hold annual meetings. Based on these alleged violations, the attorney general asked the court of appeals to issue a writ of quo warranto under R.C. 1702.52 and 2733.20, judicially dissolving the corporation. In addition, the attorney general asked the court to waive the statutory requirement of appointing a trustee and instead to appoint a receiver and to refer the matter to the Franklin County Court of Common Pleas to oversee all subsequent proceedings. Both the Reash/Brey faction and the Khan/Ball faction filed answers, purportedly on behalf of Omar Mosque.

{¶ 18} The attorney general filed a motion for summary judgment. The evidence in support of the motion consisted of pleadings from prior cases, Omar Mosque's initial articles of incorporation and pertinent meeting minutes, and bank records. In his motion, the attorney general abandoned the theory of the complaint—i.e., that quo warranto was proper due to the failure to observe corporate formalities. Rather, the motion asserted that

the basis of the present lawsuit is the $432,313.19 in interpleaded funds. *It is Omar Mosque, Inc.'s complete inability to access these funds that constitutes the charitable "abuse" and supports a finding that Omar Mosque, Inc. has forfeited its rights, privileges, and franchises* under R.C. 2733.02 and 2733.20.

(Emphasis added.)

{¶ 19} On August 19, 2016, both factions filed responses to the motion for summary judgment. The Reash/Brey faction opposed the motion and submitted various items of evidence, including the affidavit of Basil Mohamed Gohar, the current president of the board of directors. The Khan/Ball faction supported the attorney general's position, asking the court to grant the motion, dissolve the corporation, and appoint a receiver. The Khan/Ball faction's memorandum included no evidence, although an affidavit from Hassan, one of the early opponents of the initial board, was later placed into the record as an attachment to an unsuccessful motion to strike portions of Gohar's affidavit.

{¶ 20} On November 8, 2016, the Reash/Brey faction filed its own motion for partial summary judgment, seeking a declaration that the members of the second board had not been validly elected.

{¶ 21} On November 10, 2016, the magistrate issued a decision recommending that the court grant the attorney general's summary-judgment motion. The magistrate expressed a desire to avoid favoring either faction in the dispute, agreeing with the attorney general that selecting one board for removal risked "treading closer to the exclusive religious domain of the religious entity * * *, given the possibility that the differences between the factions may reflect some element of spiritual or doctrinal conflict." *State ex rel. DeWine v. Omar Ibn El Khattab Mosque, Inc.*, 10th Dist. Franklin No. 15AP-939, 2017-Ohio-4453, ¶ 82.

8

Hewing to the purely secular, the magistrate made 23 findings of fact, of which the following are pertinent:

(4) The 2007 articles of incorporation for Omar Mosque, Inc. name an initial board of directors for a two-year term. The initial board continued to govern the mosque beyond 2009.

(5) Differences between members of the congregation arose in relation to construction of improvements to the mosque building, culminating in separate meetings in October 2011 at which two competing boards were elected by the respective factions.

\* \* \*

(17) Paragraphs 8, 9, and 10 of the complaint allege that, pursuant to the 2007 articles of incorporation, the initial board was to serve through the end of 2009, but nonetheless continued to govern beyond that term. The answer filed by the Reash/Brey board admits this to the extent that the two-year terms are stated in the articles of incorporation, and that the board continued to serve, but denies that the extended terms did not comply with the corporation's bylaws or constitution.

(18) Paragraph 13 of the complaint alleges that "no special or annual meeting of the members of Omar Mosque, Inc. was held in either 2009 or 2010 for purposes of electing individuals to serve on the board of directors for Omar Mosque, Inc. in either 2010 or 2011." The answer filed by the Reash/Brey board admits this allegation.

*Id.* at ¶ 81.

**{¶ 22}** Based on these facts, the magistrate concluded that Omar Mosque "did not conform with the[] statutorily required corporate formalities." *Id*. at ¶ 92. Specifically, the corporation did not maintain a record of its members, as required by R.C. 1702.13 and 1702.15, or hold annual meetings of voting members "for the election of directors and the consideration of reports," as required by R.C. 1702.16. *Id*. at ¶ 91-92. And the magistrate connected the theories presented by the attorney general in the complaint and in the summary-judgment motion by concluding that the corporation's failure to adhere to corporate formalities *caused* the resulting schism and subsequent inability to reclaim the corporation's funds:

> The magistrate further finds * * * that the present situation is a direct result of the organization's failure to comply with requisite corporate formalities, and this failure underlies the subsequent impasse in corporate governance. Together, the failure to conform to corporate requirements and the resulting loss of control over charitable funds may support issuance of the writ requested by the attorney general.
>
> * * *
>
> The magistrate further finds that the dispute would not have arisen, or at least not caused the corporation to lose control of its funds, had the corporation complied with statutory requirements regarding membership and annual meetings.

*Id*. at ¶ 89, 91. The magistrate therefore recommended the issuance of a writ of quo warranto, the appointment of trustees, and referral of the case to the common pleas court to oversee the constitution of a successor entity. *Id*. at ¶ 93.

**{¶ 23}** On June 22, 2017, the court of appeals adopted the magistrate's findings of fact and conclusions of law and issued a writ of quo warranto. The court

of appeals referred the case to the common pleas court to oversee the dissolution of the corporation and to appoint a receiver or trustees to oversee the constitution of a successor entity. *Id.* at ¶ 70.

{¶ 24} The Reash/Brey faction timely appealed. We issued a decision affirming the judgment of the court of appeals. *Omar Ibn El Khattab Mosque I*, ___ Ohio St.3d ___, 2018-Ohio-5112, ___ N.E.3d ___. The Reash/Brey faction then moved for reconsideration pursuant to S.Ct.Prac.R. 18.02, which permits us to "correct decisions which, upon reflection, are deemed to have been made in error." *State ex rel. Huebner v. W. Jefferson Village Council*, 75 Ohio St.3d 381, 383, 662 N.E.2d 339 (1995) (considering former S.Ct.Prac.R. XI).

## II. Legal analysis

{¶ 25} Quo warranto "is an extraordinary remedy invoked against a corporation, where public interests are involved and the corporation has exercised a franchise, privilege or right in contravention of law, or misused a right conferred upon it by law." *State ex rel. Brown v. Regional Pub. Safety Serv. Corp.*, 47 Ohio App.2d 300, 303, 353 N.E.2d 851 (10th Dist.1975). In an appeal involving an extraordinary writ, once the appellant has established some error in the decision of the court of appeals, this court has plenary power to consider the case de novo. *State ex rel. Miller v. Brady*, 123 Ohio St.3d 255, 2009-Ohio-4942, 915 N.E.2d 1183, ¶ 14; *see also State ex rel. Natl. Elec. Contrs. Assn. v. Ohio Bur. of Emp. Servs.*, 88 Ohio St.3d 577, 579, 728 N.E.2d 395 (2000) ("The court's plenary authority generally refers to our ability to address the merits of a writ case without the necessity of a remand if the court of appeals erred in some regard").

{¶ 26} The standard for assessing whether the court of appeals erred in this case is the same one employed whenever a court of appeals reviews a trial court's decision granting a motion for summary judgment: summary judgment is appropriate "when an examination of all relevant materials filed in the action reveals that 'there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.' " *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12, quoting Civ.R. 56(C).

{¶ 27} Quo warranto will lie when a corporation has "misused a franchise, privilege, or right conferred upon it by law." R.C. 2733.02(D). In an action for quo warranto based on a misuse of the corporate franchise, courts may order a partial or total ouster of the offending corporation. *State ex rel. Falke v. Montgomery Cty. Residential Dev. Inc.*, 40 Ohio St.3d 71, 73, 531 N.E.2d 688 (1988); *State ex rel. Corrigan v. W. Shore Ctr.*, 31 Ohio St.2d 192, 193, 287 N.E.2d 803 (1972).

{¶ 28} In recommending dissolution of Omar Mosque, the magistrate concluded that Omar Mosque failed to comply with statutorily mandated corporate formalities and that these failures *caused* the entity to lose control of its charitable funds. *DeWine*, 2017-Ohio-4453, at ¶ 68, 91-92.

{¶ 29} The magistrate identified several statutory violations by the initial board, including overstaying the term of office, failing to hold annual meetings, and failing to maintain membership lists and books and records of account. The court of appeals agreed with the magistrate, and although the Reash/Brey faction disputes that these violations occurred, we do not need to decide that issue.

{¶ 30} Even if the initial board failed to maintain certain corporate formalities, the attorney general is not entitled to the requested writ dissolving the corporation unless he also demonstrates that "by an act done or omitted, [the] corporation has surrendered or forfeited its corporate rights, privileges, and franchises." R.C. 2733.20. The magistrate and the court of appeals found that the initial board's failure to observe corporate formalities had caused the schism and that the schism had resulted in the corporation's inability to recover the interpleaded funds. The magistrate and the court of appeals then held that the corporation's statutory violations together with the loss of control over the funds led to the

corporation's surrender of its rights, privileges, and franchises. But their reasoning is not persuasive given the evidence in the record.

{¶ 31} According to the magistrate, "the dispute would not have arisen, or at least not caused the corporation to lose control of its funds, had the corporation complied with statutory requirements regarding membership and annual meetings." *DeWine*, 2017-Ohio-4453, at ¶ 91. But the only evidence in the record demonstrates that the dispute arose over the collection and disbursement of the renovation funds. In fact, the magistrate reached this conclusion in the findings of fact. *DeWine*, 2017-Ohio-4453, at ¶ 81 (5) ("Differences between members of the congregation arose in relation to construction of improvements to the mosque building, culminating in separate meetings in October 2011 at which two competing boards were elected by the respective factions"). Based on the facts before this court, we find no basis to believe that a formal membership list and regular elections would have prevented the Khan/Ball faction from deciding to conduct its own meeting, elect its own officers, and attempt to assert its control over the corporation's funds.

{¶ 32} The initial board lost control of the renovation funds when the second board convinced Chase Bank to give the second board control over Omar Mosque's accounts. Perhaps more stringent corporate bookkeeping would have allowed Chase Bank to assess the rightful owner of the corporate funds, had the bank been inclined to undertake the inquiry. But it is abundantly clear that the bank did not want to place itself in the middle of the dispute. In an agreed entry to interplead the funds, the parties stated that Chase Bank had closed the accounts because the account agreement between Chase Bank and the corporation provided that Chase Bank " 'may file an action in interpleader with respect to any Account where we have been notified of disputed claims to that Account. If any person asserts that a dispute exists, we are not required to determine whether that dispute has merit * * * .' " *Masjid Omar Ibn El Khattab Mosque v. Salim*, Franklin C.P.

No. 11-CV-14615, 2012 Ohio Misc. LEXIS 5679, *2 (Mar. 2, 2012), quoting the account agreement. The suggestion that Chase Bank would have turned over the funds to one faction or the other if the corporate documents had been clearer is unreasonable.

{¶ 33} Nor would compliant corporate documents have induced the common pleas court to release those funds. The trial court, the court of appeals, and this court dismissed the previous cases involving these factions and their claims to ownership of the charitable funds for lack of subject-matter jurisdiction, not because the factions were unable to prove their right to the money. And the money remains frozen because a proper lawsuit to resolve the dispute has yet to be filed.

{¶ 34} The attorney general argues that although there is no precedent for issuing a writ of quo warranto to dissolve a corporation under the facts of this case, it is necessary for the court to do so here because "the current case is unique." He assures this court that

> [i]n most instances, a corporation's failure to maintain a record of its members or hold annual meetings would not amount to a surrender of its corporate rights, privileges, and franchises. In most instances, however, such a failure would not have resulted in a corporation being legally incapable of accessing $432,313.19 in corporate funds.

But there is no evidence in the record to suggest that Chase Bank would have acted differently had the initial board properly maintained a membership list or conducted elections in 2010 and 2011. Nor is there any basis from which to conclude that had the requisite formalities been observed, the initial board would have been able to recover the funds.

{¶ 35} Ultimately, a writ of quo warranto to dissolve the corporation may not issue here because the attorney general has elected to seek a remedy to which he has not proved entitlement. Despite the attorney general's understandable reluctance to take sides in the dispute, by seeking this remedy of dissolution, he *is* effectively taking sides. If the Khan/Ball faction is illegitimate, we would be rewarding its improper actions. The only way to resolve this dispute once and for all is for the attorney general to commence a proper quo warranto action to oust one faction or the other.

{¶ 36} Upon further reflection, we find that this court's initial decision was in error. Accordingly, for the reasons set forth above, we grant the motion for reconsideration, vacate our decision in *Omar Ibn El Khattab Mosque I*, reverse the judgment of the court of appeals, and remand the cause with instructions to deny the writ.

Motion for reconsideration granted,

judgment reversed,

and cause remanded.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

DEWINE, J., dissents, with an opinion joined by KENNEDY, J.

_____

**DEWINE, J., dissenting.**

{¶ 37} Last year, we reviewed the evidence in this case and a majority of the court decided that a writ of quo warranto should issue. *State ex rel. DeWine v. Omar Ibn El Khattab Mosque, Inc.*, ___ Ohio St.3d ___, 2018-Ohio-5112, ___ N.E.3d ___ ("*Omar Ibn El Khattab Mosque I*"). The current court now votes to reconsider that decision for the sole reason that the court's new members would have decided the case differently had they been given the opportunity to do so. I believe that reconsideration is inappropriate in this case, so I disagree with the

majority's decision to review and vacate the court's decision in *Omar Ibn El Khattab Mosque I*. And because I think the majority is wrong on the merits, I dissent from its judgment on reconsideration as well.

### Reconsideration is not appropriate in this case

{¶ 38} It is true that this court has the authority "to correct decisions which, upon reflection, are deemed to have been made in error." *State ex rel. Huebner v. W. Jefferson Village Council*, 75 Ohio St.3d 381, 383, 662 N.E.2d 339 (1996). But this case would seem an unlikely candidate for reconsideration. Unlike the cases that this court reconsidered two years ago, *Omar Ibn El Khattab Mosque I* did not announce watershed new rules having a significant statewide impact. *See State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883; *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419. Nor has there been any assertion that the court failed to consider certain arguments. *See*, *e.g.*, *Aalim* at ¶ 1. And this case has little precedential value, as the outcome is entirely fact specific.

{¶ 39} The motion for reconsideration contains substantially the same arguments that were originally presented to this court (except the motion now asserts that our initial decision was riddled with the same errors as those of the lower courts). Those arguments were fully addressed and decided the first time around, and there is no cause for their reconsideration here.

### On the merits, the majority misses the mark

{¶ 40} The facts of this case are straightforward. Omar Ibn El Khattab Mosque, Inc. ("the corporation"), failed to comply with corporate formalities in the years following its inception and as a result lacked procedures for resolving internal disagreements. Disputes inevitably arose, with some members of the congregation contesting the initial board's authority due in part to the board members' having remained in office beyond their intended term without holding elections. A competing board was purportedly elected, and both boards sought control of the

16

corporation and its charitable funds. The power struggle ultimately led to the corporation's inability to access those funds.

{¶ 41} R.C. 2733.02 permits the state to pursue an action in quo warranto against a corporation if that corporation has failed in certain respects to perform its essential functions. Dissolution is required when a court determines that "by an act done or omitted, [the] corporation has surrendered or forfeited its corporate rights, privileges, and franchises." R.C. 2733.20; *see also* R.C. 2733.02(C).

{¶ 42} Both the magistrate and the court of appeals concluded that the corporation's failure to adhere to the statutory requirements allowed a situation to develop in which the competing factions vied for control of the corporation's board and charitable funds. *State ex rel. DeWine v. Omar Ibn El Khattab Mosque, Inc.*, 10th Dist. Franklin No. 15AP-939, 2017-Ohio-4453, ¶ 41, 89-92. And the resulting fight for control over the corporation led to the funds being frozen and transferred to the Franklin County Clerk of Courts. *Id.* at ¶ 8-10. As the court of appeals explained:

> These basic statutory requirements that Omar Mosque, Inc.
> violated would protect a corporation from the confusion and internal
> paralysis that this case has shown resulted when an internal division
> arose. Without a defined voting membership, regular meetings, and
> up-to-date membership roster, the authority of the board, and thus
> the legitimacy of the corporation itself, is no longer supported
> through recordable action.

*DeWine,* 2017-Ohio-4453, at ¶ 41.

{¶ 43} The majority concludes that the subject of the dispute between the factions was the intended use of the mosque's funds and not the board's failure to conform to the corporate formalities. Majority opinion at ¶ 31-33. Thus, the

majority finds no causal link between the lack of formal procedures and the subsequent power struggle and loss of access to the charitable funds. But the majority overlooks two key points. First, it is undisputed that members of the congregation raised concerns about the initial board's failure to adhere to its statutory requirements—particularly its failure to conduct elections and its members' governing beyond their original term—and that these failures caused members of the congregation to question the initial board's legitimacy. Second, isolating the exact origin of the dispute is not necessary. Had the corporation adhered to the requisite formalities, there would have been a mechanism in place for addressing concerns, leadership would have been clearly established, and there would have been no question about who had control over the funds.

{¶ 44} The majority's conclusion that the only way to resolve this dispute is for the attorney general to "commence a proper quo warranto action to oust one faction or the other" is perplexing, given that the majority also recognizes that the state may pursue an action against the corporation itself rather than against one of the boards. Majority opinion at ¶ 35. This action was properly commenced pursuant to R.C. 2733.02, and the resolution sought was a sensible one.

{¶ 45} The corporation has been unable to access the $432,313.19 in charitable funds raised for the benefit of the mosque and its congregation—which was a central reason for the nonprofit's formation in the first place. These funds "have yet to be used for their intended purpose and have been inaccessible" since 2011. 2017-Ohio-4453 at ¶ 38. Since that time, the competing factions have been engaged in continuous litigation seeking a declaration as to which of them has sole access to and control over the funds. *See Masjid Omar Ibn El Khattab Mosque v. Salim*, Franklin C.P. No. 11-CV-14615; *Masjid Omar Ibn El Khattab Mosque v. Salim*, 10th Dist. Franklin No. 12AP-807, 2013-Ohio-2746; *State ex rel. Salim v. Ayed*, 141 Ohio St.3d 129, 2014-Ohio-4736, 22 N.E.3d 1054. Attempts at reconciliation have been unsuccessful. *DeWine*, 2017-Ohio-4453, at ¶ 33 (25).

Without some action by the attorney general, there would appear to be no end in sight to this dispute.

{¶ 46} I think the court of appeals got it right. It is apparent from the record that the corporation's failures to abide by statutory requirements and to establish formal procedures resulted in organizational chaos, which ultimately led to the loss of access to the charitable funds. The dysfunction and internal paralysis justify an extraordinary remedy. Thus, I would uphold the judgment of the court of appeals granting the writ of quo warranto, ordering the dissolution of the corporation, and issuing directives for the appointment of a trustee or receiver to oversee the establishment of a successor entity. Because the majority sees it differently, I respectfully dissent.

KENNEDY, J., concurs in the foregoing opinion.

_____

Dave Yost, Attorney General, and Matthew T. Green, Assistant Attorney General, for appellee Ohio Attorney General Dave Yost.

Blaugrund, Kessler, Myers, & Postalakis, Inc., and Fazeel S. Khan; Rosenberg & Ball Co., L.P.A., and David Ball, for appellee Khan/Ball faction of Omar Mosque.

Reash Law Offices, L.L.C., and Maryellen Reash; and Taft, Stettinius & Hollister, L.L.P, and Donald C. Brey, for appellant.

_____